UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICKEY A. JONES,<br>                    Plaintiff,<br>     v.<br><br>NEW ENGLAND CENTRAL RAILROAD,<br>INC.,<br>                    Defendant. | Civil Action No.: 04-11772-MAP |

## THE DEFENDANT NEW ENGLAND CENTRAL RAILROAD'S PRE-TRIAL MEMORANDUM

The defendant New England Central Railroad ("NECR") hereby files this *Pretrial Memorandum*. This *Memorandum* is being filed in this manner because, despite NECR's counsel's repeated attempts to communicate with the plaintiff's counsel in an effort to coordinate the drafting of a joint memorandum, plaintiff's counsel refused, failed and/or otherwise neglected to cooperate in a timely manner with NECR's counsel in this effort.

## I.    CONCISE SUMMARY OF EVIDENCE:

### A.    Defendant:

#### 1.    Liability:

The plaintiff claims that he was injured on August 15, 2002 as the result of falling from a "stirrup" on a railroad tank car from which he was dismounting while performing his duties as a railroad conductor in the NECR's St. Alban's, Vermont railroad yard. The evidence in this case will show that: (1) the NECR was not negligent with respect to the happening of the plaintiff's accident; (2) the NECR provided the plaintiff with a reasonably safe workplace as required by the Federal Employers' Liability Act ("FELA"); and (3) the accident was caused entirely by the

plaintiff's own carelessness.  More specifically, the NECR expects the evidence to show that there were no foreign substances (such as oil, grease and/or rotten feed) present, at the time of the plaintiff's accident, on either:  (1)  the tank car from which the plaintiff allegedly fell; (2) the area of the yard the plaintiff was working; or (3) the boots the plaintiff was wearing.  The evidence will show that the plaintiff simply lost his balance and fell and that he is now making up a story about these foreign substances.  The NECR expects that the plaintiff will be completely lacking in all credibility in this regard.

Shortly after the accident (on the same night it occurred), the plaintiff prepared a *Personal Injury Report* in which he stated he simply slipped from the stirrup on the tank car.  He did not mention any foreign substances on either his boots or the tank car itself.  The plaintiff also stated in his *Personal Injury Report* that he did not know of any defects with the car at the time of the alleged incident.

In a recorded statement the plaintiff made one week after the accident, he again did not mention any substance, such as slurry, oil, grease or rotten feed/grain – instead, he stated that he simply fell.  He also failed to mention, in *Answers to Interrogatories* he signed on November 24, 2004, that slurry, oil, grease or rotten feed had anything to do with his accident.

The car involved in the alleged incident was inspected by NECR car inspector Thomas Tozzer the next day while it was still located in the railroad yard.  It was determined that all safety appliances, including the stirrup in question, were in good shape and there were no defects at the time of the accident.  Mr. Tozzer also determined there were no foreign substances such as grease, oil or slurry on the stirrups.

Only in the context of this lawsuit, under the guiding hand of his counsel, has plaintiff mentioned that slurry, oil, grease and/or rotten grain/feed caused him to slip from the tank car.

The NECR intends to present evidence that these conditions did not exist on or around the tank car allegedly involved in the plaintiff's incident.  The plaintiff himself has admitted that there was no slurry present on the stirrup from which he fell.  The NECR also expects the evidence to show that even if the plaintiff had tracked some substance on his boot while walking through the defendant's rail yard, it could not have caused his alleged slip from the tank car.  The plaintiff stated in his deposition that he stepped on the stirrup with the <u>arch</u> of his foot; however, in the same deposition, he admits that oil or grease was only present on the <u>toe</u> of his boot, which in no way could have caused his fall from the tank car.

The defendant also expects to show that, to the extent these conditions were present: (1) the plaintiff himself was solely responsible for their involvement in his incident; and (2) it did not have the notice of these conditions required to impose liability under the FELA.  All of these conditions were, according to the plaintiff, present in such large commodities that they were open and obvious.  He easily could have, and should have, avoided walking through large puddles of oil or grease or large piles of rotten grain.  In fact, the plaintiff was required, by the rules which governed the performance of his job, to closely inspect walking conditions and to avoid any substance which could affect his safety.  In addition, the plaintiff was required to inspect the tank car for any defects, such as the presence of slurry on the stirrup.  If the slurry was indeed present, he failed to properly inspect, notice and remedy the condition.  Moreover, the conditions were present on the plaintiff's boots, if at all, for a very short time – there is no evidence that the defendant had any notice of these conditions.

Finally, the plaintiff had the best and last clear chance to avoid this accident.  He could have, and should have, removed whatever substance he had tracked onto his boots, thereby removing any slipping hazard, before he mounted the tank car.  He could have, and should have,

removed whatever slurry was on the stirrup.  Perhaps most importantly, he could have, and

should have, simply avoided walking through the piles and puddles of these substances which,

according to his testimony, were present throughout the yard – there were a number of

alternative methods of performing his job which would not have necessitated his walking

through these substances.

2.    **Damages**:

a.    **The Plaintiff's Physical Injuries**:

The defendant states that the plaintiff was not injured as a result of the alleged incident.

The defendant intends to elicit evidence that the plaintiff suffered from prior knee problems

which are the true cause of any injuries and/or disability the plaintiff claims.   The defendant also

expects the evidence to demonstrate that any injuries the plaintiff suffered as a result of his

August 15, 2002 incident fully resolved within a few short months thereafter and that the

plaintiff was subsequently injured on July 14, 2003 in a separate, non-related incident to which

no liability attaches.  It was this second accident, alone or in conjunction with the plaintiff's

preexisting conditions, which caused the problems about which he now complains.

The plaintiff claims in this lawsuit that on August 15, 2002 he injured his right knee as

the result of a fall from a railroad tank car.  However, before and since August 15, 2002 the

plaintiff suffered from other serious conditions and injuries to the very same part of his body.

Specifically, in1998 he developed patellar femoral syndrome[1] in his right knee while in the U.S.

Marines.  This condition led to the plaintiff's being medically disqualified and discharged from

the Marines.  Notably, the plaintiff is now claiming to be disabled due to patella femoral

---

[1] Patellar femoral syndrome is a condition which results in the separation of a muscle attached to the knee cap which
causes the knee cap to articulate improperly with the femur causing pain and discomfort, and ultimately,
degenerative changes.

4

syndrome and degenerative osteoarthritis of the right knee.  On June 9, 2002, nearly two months before the date of the incident which is the subject of this litigation, the plaintiff again injured his right knee while playing volleyball, an injury for which he sought medical care and treatment at Northwest Medical Center.  The plaintiff missed two weeks from work due to the injury to his right knee and used crutches and a knee brace during this period of time. The plaintiff was diagnosed with a right knee sprain.   At the hospital on June 10, 2002, the plaintiff was unable to straighten his right knee due to his injury playing volleyball the previous day.

Following the August 15, 2002 incident the plaintiff was diagnosed with a tear of the meniscus and anterior cruciate ligament ("ACL").   The plaintiff then underwent a reconstruction of his ACL and a meniscectomy at which time it was found that the plaintiff suffered from arthritis in the area where his femur contacted the patella  - the same area affected by the plaintiff's pre-existing patellar femoral syndrome.   The plaintiff fully recovered after physical therapy and returned to work on March 24, 2003. From March 24, 2003 until July 14, 2003, the plaintiff worked his full shifts and overtime and was able to fully perform the duties of his job.

On July 14, 2003, eleven months after the incident which is the subject of this lawsuit, the plaintiff injured himself once again.  He as simply walking in the St. Alban's railroad yard when his right knee pinched and buckled.    The plaintiff never reported this injury to NECR, because, according to his deposition testimony,  there was no defect nor negligence involved. The plaintiff's counsel has represented, on the record at the plaintiff's deposition, that the plaintiff is not seeking recovery for any injury that resulted from the July 14, 2003 incident.

The defendant's orthopedic expert, Dr. Michael Kennedy, will opine that the plaintiff's current knee problems were not caused by the August 15, 2002 accident.  Instead, the plaintiff

has a degenerative condition, patellar femoral syndrome, that pre-existed the alleged incident, and any injuries the plaintiff claims due to the alleged incident was, at best, an exacerbation of his pre-existing condition.  Further, the plaintiff fully recovered from the August 15, 2002 incident, and only upon re-injuring same July 14, 2003, does he now claim permanent disability.

**b.     The Plaintiff's Economic Damages:**

The defendant expects the evidence to demonstrate that the plaintiff is fully capable of finding gainful employment which would pay him more than he was making at the time of his accident, and that the plaintiff is a malingerer because he has refused to even attempt to find any job other than a position at an auto parts dealer which pays him only $8.00/hr.  Even in this job, the plaintiff works 40-45 hours per week, performs many physical tasks, drives a company-owned truck and frequently makes sales calls.  More importantly the plaintiff himself has admitted that he is physically capable of returning to railroad work as an engineer, a yard master or a dispatcher.  The latter two positions earn a higher rate of pay than the plaintiff was making at the time of his accident.  Given this evidence, and the testimony of its vocational expert, Dr. Robert Galt, the NECR expects to demonstrate that the plaintiff has suffered no lost earning capacity.

**II.     THE FACTS ESTABLISHED BY THE PLEADINGS OR BY STIPULATION OR ADMISSIONS OF COUNSEL – PROPOSED BY DEFENDANT'S COUNSEL:**

The defendant submits that the following facts have been stipulated, established by  the pleadings and/or admitted to:

- This action has been brought pursuant to the *Federal Employers' Liability Act*, 45 U.S.C. 51, *et. seq.*  The NECR is a railroad within the meaning of that statute.

- On August 15, 2002, the plaintiff was employed by NECR as a Conductor and was engaged in his duties as a Conductor and together the parties were involved in interstate commerce.

- The plaintiff's duties in that position included moving and switching cars in and around NECR's Italy yard in St. Albans, Vermont.

- The plaintiff claims he was injured August 15, 2005.

- The car involved in the events of August 15, 2002 was a tank car No. SHPX201016.

- The plaintiff, at the time and place alleged, was in the process of switching a string of three cars from one track no. 108 to track no. 109 in the Italy yard.

- The plaintiff was dismounting tank car No.: SHPX201016 on track 109 at the time of the alleged incident.

- The plaintiff returned to work on March 24, 2003.

- The plaintiff worked his full shifts as well as periodic overtime, from March 24, 2003 until July 14, 2003, during which time he performed the full duties of his jobs.

- The plaintiff's right knee buckled on July 14, 2003 while the plaintiff was walking through the St. Albans yard.

- The plaintiff does not claim that the NECR was liable for or negligent regarding the July 14, 2003 incident.

- The plaintiff's date of birth is ███████████████, and his social security number is ███████████.

- The plaintiff's date of hire with NECR was April 2, 2001.

- The plaintiff was a member of the United Transportation Union on the day of the accident.

- The plaintiff's incident was reported to William Magee on August 15, 2002.

- Nathaniel Cobb was working as an engineer on the PM switcher job with the plaintiff on August 15, 2002.

III. **CONTESTED ISSUE OF FACT:**

    A.    Whether plaintiff has suffered, as the result of his August 15, 2002 incident, the injuries complained of;

B.      Whether the plaintiff's injuries were actually and proximately casued by the defendant's negligence;

C.      Whether these injuries were pre-existing;

D.      Whether these injuries were fully resolved and later exacerbated or whether an entirely separate and independent injury took place on July 14, 2003;

E.      The percentage of the plaintiff's current disability which is due the August 15, 2002 incident, the percentage which preexisted, and the percentage which is due to the July 15, 2003 incident;

F.      The extent and severity of plaintiff's injuries;

G.      Whether and to what extent the plaintiff is disabled;

H.      The extent of plaintiff's alleged economic damages, if any;

I.      Whether the plaintiff has failed to mitigate his damages;

J.      Whether the defendants provided a reasonably safe workplace for the plaintiff;

K.      The negligence, if any, of either party;


IV.    **JURISDICTIONAL QUESTIONS:**

None.


V.     **QUESTIONS RAISED BY PENDING MOTIONS:**

The defendant expects to file the following motions in limine:

A.       *Motion In Limine to Admit Collateral Source Benefit Evidence on Issue of Credibility.*

B.      *Motion In Limine To Admit Apportionment Evidence.*

C.  *Motion In Limine to Exclude Any Evidence that Stirrup of Rail Car was Improperly Designed.*

D.  *Motion In Limine to Exclude Photographs Taken by Plaintiff.*

E.  *Motion In Limine  To Exclude Any Evidence About The Presence Of Slurry, Oil Or Grease.*

F.  *Motion In Limine To Preclude The Plaintiff From Presenting A Theory Of Liability Based On The Events Surrounding His Injuries Sustained On July 14, 2003 And For A Pre-Trial Instruction On This Issue.*

## VI.  ISSUES OF LAW INCLUDING EVIDENTIARY QUESTIONS TOGETHER WITH SUPPORTING AUTHORITY:

### A.  Defendant's Statement of the Law:

#### a.  FELA Liability:

The defendant expects to prove that it provided the plaintiff with a "reasonably safe workplace" and thus did not violate the provisions of the *Federal Employers' Liability Act*, 45 U.S.C. 51, et seq.  ("FELA").  Moreover, the defendant states that any such accident was due solely to the plaintiff's own negligence.  Consequently, the defendant maintains that the plaintiff will be unable to meet his burden in proving each and every element of his FELA case.

In order to recover under FELA, the plaintiff must prove that the railroad was negligent. Tennant v. Peoria and Pekin Union Ry. Co., 321 U.S. 29 (1944).  A plaintiff's prima facie case under the FELA must include all the same elements as are found in a common law negligence action including the element of foreseeability.  Davis v. Burlington Northern, Inc., 541 F.2d 182 (8th Cir. 1976) cert. denied, 429 U.S. 1002 (1976); Robert v. Consolidated Rail Corp., 832 F.2d 3 (1st Cir. 1987).  The plaintiff must prove each of these elements by a fair preponderance of the evidence.  Id. at 6.  A FELA defendant is not required to provide a perfect or absolutely safe workplace; rather its duty is to provide only a reasonably safe place to work.  Id.  "Although the burden on a FELA plaintiff is not onerous, neither is it nonexistent, the plaintiff must present probative facts from which the negligence and the causal relation could reasonably be inferred." Dessi v. Pennsylvania R.R., 251 F.2d 149, 151 (3rd Cir. 1958), cert. denied, 356 U.S. 967 (1958).

#### b.  Causation Under the FELA:

A plaintiff must not only prove the employer's negligence, but that the negligence was

the actual and proximate cause of plaintiff's injuries. *See* Chesapeake & Ohio Ry. v. Carnahan, 241 U.S. 241, 244 (1916). Although FELA is construed broadly, it does not impose strict liability on employers. *See* Robert, 832 F.2d at 6. As stated by the Court in Conroy v. Consolidated Rail Corp., 720 F.2d 221, 223 (1st Cir. 1983), "it is black letter law that a FELA plaintiff is not entitled to absolute security; the act, unlike Workmen's Compensation Statutes, does not make an employer an insurer…It does not require absolute elimination of all dangers, but only contemplates the elimination of those dangers which could be removed by reasonable care on the part of the employer."

In this regard, statements that the plaintiff's burden of proof under the FELA is "slight" have occasionally been misconstrued. Specifically, the holding in Rogers v. Missouri Pacific R.R. Co., 352, U.S. 500, 506 (1957) does not support the view that FELA liability may be characterized "as one of slight negligence, minimal negligence, and even infinitesimal negligence." Such view has been soundly criticized in FELA decisions in recent years. An especially thoughtful analysis of this particular issue is provided in Gautreaux v. Scurlock Marine, Inc., 107 F.3d 332, 335-339 (5th Cir. 1997) (reference to work "slightest" in Rogers decision modifies only the causation prong of statutory liability and does not modify the concept of "negligence"; thus, duty of care owed by FELA and Jones Act employers retains usual and familiar definition of ordinary prudence, and does not impose a higher standard of care on defendants). Chapman v. Union Pac. R.R., 467 N.W. 2d 388, 395 (Neb. 1991) ("To recover under the *Federal Employers' Liability Act*, an employee must prove…that the alleged negligence is a proximate cause of the employee's injury"). In Consolidated Rail Corp. v. Gottshall, 512 U.S. 532 (1994), after issuing a reminder that FELA "does not make the employer the insurer of the safety of his employees while they are on duty,"[2] the U.S. Supreme Court explained that FELA "is founded on common-law concepts of negligence and injury." Id. at 543. Three years later, in Metro-North Commuter R.R. v. Buckley, 521 U.S. 424, 429 (1997) the Court reiterated this view of FELA.[3]

> i.     **The United States Supreme Court Has Established That A Railroad May Only Be Liable Under The FELA If Its Conduct Was The Proximate Cause In Whole Or In Part Of The Employee's Injury.**

Section 1 of the *Federal Employers' Liability Act* ("FELA") makes "[e]very common carrier by railroad ... liable in damages" for the injury or death of any employee employed in interstate commerce that "result[s] in whole or in part from the [railroad's] negligence." 45 U.S.C. § 51. Absent an express statutory departure, the requisite elements of a FELA cause of action are determined by the common law "'as established and applied in the federal courts.'" Urie v. Thompson, 337 U.S. 163, 174 (1949).

---

[2] Quoting Inman v. Baltimore & Ohio R.R., 361 U.S. 138, 140 (1959) and Ellis v. Union Pac. R.R., 329 U.S. 649, 653 (1947).

[3] Gottshall and Buckley both established limiting rules for recovery for negligent infliction of emotional distress as being consistent with common law principles at the time of FELA's enactment.

10

The long-established standard of causation under FELA, set forth in numerous precedents of the United States Supreme Court, is proximate cause: the plaintiff must prove that the railroad's "negligence was the proximate cause in whole or in part" of the employee's injury. Tennant v. Peoria & Pekin Union Ry., 321 U.S. 29, 32 (1944). Because the statute provides that a railroad may be liable if the employee's injury or death "resulted … in part from the [railroad's] negligence," 45 U.S.C. § 51, the jury may find the railroad liable even if there were other causes of the employee's injury or death. However, the Supreme Court has emphasized that the requirement of proximate causation must still be met: the railroad's conduct must be either "the sole or a contributory proximate cause." Coray v. Southern Pac. Co., 335 U.S. 520, 523 (1949). Accordingly,

> "to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act."

Brady v. Southern Ry., 320 U.S. 476, 483 (1943). The Supreme Court has reiterated the federal proximate cause rule under FELA in case after case.[4]

The Supreme Court further elaborated the federal proximate-cause rule in Davis v. Wolfe, 263 U.S. 239 (1923). In that case, which involved a FELA claim based on the railroad's violation of the Safety Appliance Act,[5] the Court held that "an employee cannot recover" if the railroad's unlawful conduct "is not a proximate cause of the accident which results in his injury, *but merely creates an incidental condition or situation in which the accident, otherwise caused, results in such injury*." Id. at 243 (emphasis added). On the other hand, the employee may recover if such conduct was "a proximate cause of the accident, resulting in injury to him while in the discharge of his duty." Id.

Notwithstanding this overwhelming precedent, some lower courts have held that the Supreme Court *sub silentio* overruled decades of its prior causation precedents in Rogers v. Missouri Pacific Railroad, 352 U.S. 500 (1957). *See, e.g.*, Oglesby v. Southern Pac. Transp. Co., 6 F.3d 603, 607 (9th Cir. 1993) ("'proximate cause' is not required under the FELA"); Summers v. Missouri Pac. R.R. Sys., 132 F.3d 599, 606 (10th Cir. 1997) (holding that Rogers "definitively

---

[4] *See, e.g.*, Lang v. New York Cent. R.R., 255 U.S. 455, 461 (1921) (reversing for lack of evidence of proximate cause); St. Louis-S.F. Ry. v. Mills, 271 U.S. 344, 347 (1926) (same); Northwestern Pac. R.R. v. Bobo, 290 U.S. 499, 503 (1934) (same); *see also, e.g.*, St. Louis, Iron Mountain & S. Ry. v. McWhirter, 229 U.S. 265, 280 (1913); Davis v. Kennedy, 266 U.S. 147, 148 (1924); Minneapolis, St. Paul & Sault Ste. Marie Ry. v. Goneau, 269 U.S. 406, 409-10 (1926); New York Cent. R.R. v. Ambrose, 280 U.S. 486, 489 (1930); Swinson v. Chicago, St. Paul, Minneapolis & Omaha Ry., 294 U.S. 529, 531 (1935); Brady v. Terminal R.R. Ass'n, 303 U.S. 10, 15 (1938); Tiller v. Atlantic Coast Line R.R., 318 U.S. 54, 67 (1943); Coray, 335 U.S. at 523 (1949); Urie, 337 U.S. at 195; O'Donnell v. Elgin, Joliet & E. Ry., 338 U.S. 384, 390 (1949); Carter v. Atlantic & St. Andrews Bay Ry., 338 U.S. 430, 434-35 (1949); Brown v. Western Ry. of Ala., 338 U.S. 294, 297-98 (1949).

[5] Violations of the *Boiler Inspection Act* and the *Safety Appliance Act* are actionable under FELA even in the absence of negligence, but the same "test of causal relation" applies in those cases as in negligence cases. Carter, 338 U.S. at 434; Louisville & Nashville R.R. v. Layton, 243 U.S. 617, 621 (1917) ("carriers are liable to employees in damages whenever the failure to obey these safety appliance laws is the proximate cause of injury to them when engaged in the discharge of duty").

abandoned" proximate causation). These decisions cannot be followed for two reasons. First, they are based on a patent misreading of <u>Rogers</u>. Second, and most fundamentally, the Supreme Court has held that it has the exclusive prerogative to declare its precedents overruled, and lower courts must continue to follow those prior precedents, even if they believe them to be inconsistent with later Supreme Court decisions. <u>Rodriguez de Quijas v. Shearson/American Express, Inc.</u>, 490 U.S. 477, 484 (1989).

### ii. <u>The Supreme Court in Rogers v. Missouri Pacific Railroad Did Not Overrule Its Prior Precedents Establishing Proximate Cause As The FELA Standard:</u>

<u>Rogers</u> did not overrule, implicitly or explicitly, any of the numerous Supreme Court precedents establishing the federal rule of proximate cause under FELA. Rather, <u>Rogers</u> rejected a particular common-law conception of "proximate cause" that required a showing that the railroad's wrongful act was the "sole, efficient, producing cause of injury." 352 U.S. at 506. That conception was contrary to both the plain language of FELA and prior Supreme Court Court's precedents on proximate cause. <u>Rogers</u> made clear that in circumstances where the jury could find either the employee's or the railroad's negligence to be the proximate cause of the injury, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." <u>Id</u>.

In <u>Rogers</u>, the employee had been burning weeds on a sloping track bed. When a train passed, it fanned the flames of the fire he had created, and forced the employee back onto a culvert. The employee slipped on gravel and fell off the culvert, injuring himself. At trial, the employee adduced evidence that the railroad was negligent in requiring him to work near the tracks where passing trains could fan the flames around him, and in failing to maintain the surface of the culvert; the railroad countered with evidence that the plaintiff was negligent in not watching his fire. <u>Id</u>. at 502-04. The Court expressly stated that, on the evidence presented, the jury could have found either the employee or the railroad to have been the legal cause of the injury. <u>Id</u>. at 504.

Even though the jury had found for the plaintiff, the Missouri Supreme Court had reversed the judgment, in part on the ground that the employee's "conduct was at least as probable a cause for his mishap as any negligence of the [railroad], and that in such case there was no case for the jury." <u>Id</u>. at 505. The state court had erroneously ruled that "there is no jury question in actions under this statute … unless the judge can say that the jury may exclude the idea that his injury was due to causes with which the defendant was not connected." <u>Id</u>. at 505-06. The United States Supreme Court in <u>Rogers</u> disapproved the state court's decision, which improperly invoked "language of proximate causation which makes a jury question dependent upon whether the jury may find that *the defendant's negligence was the sole, efficient, producing cause of injury*." <u>Id</u>. at 506 (emphasis added). A rule that the railroad's negligence must be "the sole, efficient, producing cause of injury" is contrary to the statutory directive that renders a railroad liable if it is a partial cause of the employee's injury. 45 U.S.C. § 51. Rather, where the evidence suggested multiple possible causes, the Supreme Court held that "[u]nder this statute

12

the *test of a jury case* is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." 352 U.S. at 506 & n.11 (emphasis added). If that test is met, "a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities." Id. at 507.

Rogers cannot be read to overrule the *federal* proximate cause standard that the Court had established in its prior FELA cases. *See* Gallick v. Baltimore & Ohio R.R., 372 U.S. 108, 120 n.8 (1963) (invoking Rogers to uphold a jury verdict of proximate causation, and applying the "substantial factor" test of the *Restatement (Second) of Torts* § 435 (1965)). Indeed, Rogers was not creating new law at all; it simply restated settled law under FELA for cases involving multiple causation. See, *e.g.*, Hines v. Sweeney, 201 P. 165, 170 (Wyo. 1921) ("Under this act the railroad company is liable, if its negligence contributes proximately to the injury, no matter how slightly, and no matter how great may be the negligence of the employee."); New York, Chi. & St. Louis R.R. v. Niebel, 214 F. 952, 955 (6th Cir. 1914) (a railroad "is liable, if through other employees it is guilty of any causative negligence no matter how slight in comparison to that of plaintiff"); Atlantic Coast Line R.R. v. McIntosh, 198 So. 92, 96 (Fla. 1940) (Brown, J., dissenting in part and expressing the opinion of the court with regard to this issue). *See* Marazzato v. Burlington N. R.R., 817 P.2d 672, 674 (Mont. 1991) ("the Rogers case was addressing the issues of multiple causes and contributory negligence after it had been established that the employer was negligent").

Not only did Rogers never question the Supreme Court's prior precedents, but it explicitly derived its test of a jury case from prior FELA decisions that confirmed the longstanding federal proximate cause rule. For example, Coray, *cited in* Rogers, 352 U.S. at 506 n.11, held (as noted above) that the railroad's negligence must be either "the sole or a contributory proximate cause" of the employee's injury. 335 U.S. at 523. Similarly, Carter v. Atlanta & St. Andrews Bay Railway, *cited in* Rogers, 352 U.S. at 507 n.13 held that the railroad can only be held liable if "the jury determines that the defendant's breach is 'a contributory proximate cause' of injury." 338 U.S. 430, 435 (1949). In short, Rogers did not abrogate proximate cause as the standard the jury was to apply; rather, it simply established the "test of a jury case" when there was evidence of multiple possible causes of injury.[6]

### iii. **This Court Must Follow Supreme Court Precedents On Point Regardless Of Any Perceived Inconsistency With Later Precedent:**

Even if this Court were to interpret Rogers differently, it must still apply the federal proximate cause rule established in prior Supreme Court precedents. The Supreme Court has declared emphatically that the lower courts may not deviate from its precedents on point,

---

[6] The Supreme Court has stated in Consolidated Rail Corp. v. Gottshall, 512 U.S. 532 (1994) that FELA employs a "relaxed standard" of causation, *id.* at 543, and in Crane v. Cedar Rapids & Iowa City Railway, 395 U.S. 164 (1969), that a FELA plaintiff "is not required to prove common-law proximate causation," Id. at 166. Those statements are true; Rogers rejected the older common law conception of "proximate causation which makes a jury question dependent upon whether the jury may find that the defendant's negligence was the sole, efficient, producing cause of injury." Rogers, 352 U.S. at 506. Rogers did not, however, overrule or cast doubt on the longstanding proximate cause rule established in the Court's FELA precedents.

regardless of the perceived effect of later decisions: "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." Rodriguez de Quijas, 490 U.S. at 484; State Oil Co. v. Khan, 522 U.S. 3, 20 (1997) ("it is this Court's prerogative alone to overrule one of its precedents").

### c.     Notice of Alleged Defect:

In cases such as the plaintiff's, where an employee was allegedly injured as a result of an unsafe condition, including the presence of foreign substances or defective equipment, the employee must "show that the defendant had notice of the defect, either actual  or constructive." Beeber v. Norfolk Southern Corp., 754 F. Supp. 1304, 1309 (N.D. Ind., 1990); see also Kaminski 200 F.2d at 4 ("Before defendant can be charged with negligence in failing to remedy the condition which caused plaintiff's injury, or failed to warn plaintiff of the existence of such a condition, it is necessary to establish that the defendant had actual knowledge of the condition, or, in the exercise of ordinary care, should have known of its existence."). The employee must show that: (1) an officer, employee or agent of the railroad was responsible, through negligence, for the presence of the unsafe condition; or (2) at least one of such persons had actual knowledge of its presence before the accident; or (3) the unsafe condition had continued for a sufficient length of time to justify the inference that failure to know about it and remove it was due to want of proper care. Brown v. Cedar Rapids and Iowa City Ry. Co., 650 F.2d 159, 161 (8th Cir. 1981). The burden of proving such knowledge rests on the plaintiff: "[t]he presumption prevails, even after proof of the defect, that the railway company was not aware of its existence; and until it is shown that the railway company knew, or in the exercise of ordinary care should have known, of the defect, it is not charged with that knowledge.  Beeber, 754 F.Supp. at 1389, quoting St. Louis R. Co. v. Ingram, 124 Ark. 298, 187 S.W. 452, 453 (1916), aff'd, 244 U.S. 647, 37 S.Ct. 741 (1917).

### d.     Payment of Medical Expenses:

The plaintiff is not entitled to recover damages for medical expenses covered by the plaintiff's insurance policy, the premiums for which were paid by the railroad.  Rogers v. Chicago & Northwestern Transportation Co., 375 N.E.2d 952 (1978); Nelson v. Pennsylvania Central Railroad Co., 415 F.Supp. 225 (1976).  The plaintiff may not recover for medical expenses paid pursuant to the plaintiff's insurance policy covered by the railroad, but may introduce evidence concerning the amount of medical bills or expenses; defendant railroad may thereafter introduce evidence regarding the expenses that have been paid.  Brice v. National Railroad Passenger Corporation, 664 F.Supp. 20 (1987).  Some courts have held that a plaintiff cannot recover medical expenses paid by the railroad's health insurance and, therefore, the amounts of medical bills and expenses bare little, if any, relevance to the plaintiff's claim and were properly excluded from evidence.  Varhol v. National Railroad Passenger Corp., 909 F.2d 1557 (7th Cir. 1990).  45 U.S.C. §55 provides that a railroad may set off in a FELA suit "any sum it has contributed and paid to any insurance, relief benefit or indemnity that may have been paid to the injured employee on account of the injury or death for which said action was

brought."

    **e.**    **Payment of Wage Continuation Benefits:**

A railroad defendant is entitled to an offset for sums paid for medical treatment and for salary continuation under a long term disability plan.  <u>Anglim v. Missouri Pacific R.R. Co.</u>, 832 S.W.2d 298 (Mo. Banc 1992).

    **f.**    **Prejudgment Interest:**

Prejudgment interest is not permitted in a FELA action for injuries.  <u>Morgan v. Monessen Southwestern Ry. Co.</u>, 108 S. Ct. 1837 (1988).

    **g.**    **Proper Measure of Damages:**

Net wage loss is the proper measure of damages.  <u>Jones & Laughlin Steel Corp. v. Pfeifer</u>, 462 U.S. 523 (1983); <u>Norfolk & Western Ry. Co. v. Liepelt</u>, 444 U.S. 490 (1980); <u>Cazad v. Chesapeake & Ohio Ry. Co.</u>, 404 N.E.2d 320 (Ill. App. 1980).  Only after tax, or "net" income, is the proper measure of damages.  <u>Norfolk & Western Ry. Co. v. Liepelt</u>, *supra*.  Not only must federal income tax be deducted from any future wage loss calculation, but social security tax or railroad retirement tax must also be deducted, along with any state income tax.  <u>Pickel v. International Oilfield Divers, Inc.</u>, 791 F.2d 1237 (5th Cir. 1986); <u>Matador v. Ingram Tank Ships, Inc.</u>, 732 F.2d 475 (5th Cir. 1985).  Plaintiff is required to deduct from his gross earnings not only taxes, but also the business costs and expenses he will not incur as a result of his alleged injuries.  These costs and expenses include union dues, transportation expenses, and special work clothing or safety equipment.  <u>Jones & Laughlin Steel Corp. v. Pfeifer</u>, 732 F.2d 475 (5th Cir. 1985).

    **h.**    **Future Pain and Suffering:**

The FELA requires a reduction of future pain and suffering to present value.  <u>St. Louis S.W. Ry. Co. v. Dickerson</u>, 470 U.S. 409 (1985).

    **i.**    **Apportionment Damages:**

It is a longstanding tenant of FELA jurisprudence that a railroad defendant is entitled, as a matter of law, to present evidence on a plaintiff's pre-existing medical conditions and accidents, and also to have the jury be instructed that it is to apportion the damages by allocating a percentage to the plaintiff's pre-existing conditions and prior accidents, and to have the plaintiff's damages reduced by the amount of this allocation.  *See, e.g.* <u>Stevens v. Bangor and Aroostook Railroad Company</u>, 97 F.3d 594, 601-602 (1st Cir. 1996); <u>Harris v. Illinois Central Railroad Co.</u>, 58 F.3d 1140, 1144-1145 (6th Cir. 1995); <u>Sauer v. Burlington Northern Company</u>, 106 F.3d 1490, 1495 (10th Cir. 1996); <u>Varhol v. National Railroad Passenger Corp.</u>, 909 F.2d 1557, 1564-1565 (7th Cir. 1990); <u>Akers v. Norfolk and Western Railway Co.</u>, 417 F.2d 632 (4th Cir. 1969); <u>Holladay v. Chicago, Burlington and Quincy Railroad Co.</u>, 255 F. Supp. 879, 886

(S.D. Iowa, 1966).

An employee who has been injured partially by a FELA employer's negligence and partially by other causes, whether those other causes relate to the preexisting condition or to a concurrent, contemporary cause arising from the circumstance of the injury, must pay damages only for those injuries attributable to its negligence and an apportionment instruction may be proper. <u>Dale v. Baltimore & Ohio R.R. Co.</u>, 552 A.2d 1037 (Pa. 1989); <u>Shupe v. New York Central System</u>, 339 F.2d 998 (7thCir. 1965).

## VII.  <u>AMENDMENTS TO THE PLEADINGS</u>:

None.

## VIII.  <u>ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE ACTION</u>:

None.

## IX.  <u>PROBABLE LENGTH OF TRIAL BY JURY</u>:

Five (5) to seven (7) days.

## X.  <u>WITNESS LIST</u>:

### A.  <u>Defendant</u>:

#### 1.  Anticipated Witnesses to be Called:

1.  The plaintiff, Rickey A. Jones, 407 Desoto Ave., Clewiston, MA;

2.  Dr. Michael Kennedy, 6 Union Street, Natick, MA;

3.  Dr. Robert Galt, 2001 Palm Beach Lakes Blvd, West Palm Beach, FL 33409;

4.  Sherry Lynn Jones; Hammond, IN;

5.  Jessica (Garcia) Jones;

6.  Plaintiff's treating physicians, nurses, therapists, medical treatment providers, and other medical professionals regarding the injuries, medical treatment and the nature and extent of any disabilities which were allegedly caused by the accident

16

which is the subject of the plaintiff's *Complaint*, as well as any and all pre-

existing conditions or injuries, including but not limited to:

    a.    Dr. Robert N. Beattie; Northwestern Medical Center, 133 Fairfield St., St. Albans, VT;

    b.    Dr. Raymond A. Long, 3 Crest Road, St. Albans, VT;

    c.    Representatives from Center for Bone and Joint Surgery, 10131 West forest Hill Blvd., West Palm Beach, FL;

    d.    Dr. Michael Mikolajczak; 10131 West Forest Hill Blvds., Suite 206, West Palm Beach, FL;

7.    Deborah Morin; c/o NECR; 2 Federal Street, Suite 201, St Albans, VT  05478;

8    Nathaniel Cobb, c/o NECR; 2 Federal Street, Suite 201, St Albans, VT  05478;

9.    Dick Ogden; c/o Railway Claims Services; 2 Federal Street, Suite 201, St Albans, VT  05478;

10.    Mike Lawyer, c/o NECR; 2 Federal Street, Suite 201, St Albans, VT  05478;

11.    Steve Larro; c/o NECR; 2 Federal Street, Suite 201, St Albans, VT  05478;

12.    Thomas Tozzer, c/o NECR; 2 Federal Street, Suite 201, St Albans, VT  05478;

13.    Brad Ovitt, c/o NECR, 2 Federal Street, Suite 201, St Albans, VT  05478;

14.    Charlie Moore, c/o NECR, 2 Federal Street, Suite 201, St Albans, VT  05478;

15.    Kevin Bushey, c/o NECR, 2 Federal Street, Suite 201, St Albans, VT  05478;

16.    Jeff Howard, c/o NECR, 2 Federal Street, Suite 201, St Albans, VT  05478;

17.    Larry LaRoque, c/o NECR, 2 Federal Street, Suite 201, St Albans, VT  05478;

18.    Bill Magee, c/o Iowa Northern Railroad, 122 North Second Street, Green, IA;

19.    Arnold Morin, Miller River Road, St. Albans, Vt.;

20.    Scott Morin, South Carolina;

21.    Tom Murphy, c/o NECR, 2 Federal Street, Suite 201, St Albans, VT  05478;

    **2.**    **Potential Witnesses:**

1.    Plaintiff's treating physicians, nurses, therapists, medical treatment providers, and other medical professionals regarding his treatment for injuries allegedly suffered as the incident which is the subject of his complaint, as well as any and all pre-existing conditions or injuries, including but not limited to:

    a.    Representatives of Northwestern Occupational Health, 5 Crest Road, St. Albans, VT 05478;

    b.    Representatives from Northwestern Medical Center, 133 Fairfield St., St. Albans, VT;

2.    Jessica (Garcia) Jones; last known address, 6333 Sea St., Biloxi, MS;

3.    Representatives of South Central Florida Express, 900 SWC Owens Ave., Clewiston, FL;

4.    Representatives of On Track Investigations, North Palm Beach, FL;

5.    Dr. Verne Backus;

6.    Mike Mitchell.

The defendant reserves the right to: call the plaintiff's treating physicians, all expert witnesses identified by the plaintiff, expert rebuttal witnesses; to supplement and/or amend its expert witness list prior to trial; and to further identify expert witnesses once plaintiff fully and completely identifies his expert witnesses.

**XI.**    **<u>PROPOSED EXHIBITS:</u>**

    **A.**    **<u>Agreed to Exhibits:</u>**

        1.    Map of the Italy Yard, St. Albans;

    **B.**    **<u>Defendant's List of Exhibits</u>:**

        **1.**    **<u>Those Which the Defendant Expects to Offer:</u>**

1.    Employee's Personal Injury Report (form PI002), dated August 15, 2002;

2.    Railroad Employee Injury And/Or Illness Record (form PI001) dated August 15, 2002;

3.    Personal Injury Report completed by Nathaniel Cobb, dated August 15, 2002;

4.    Transcript and tape of Statement of Rickey A. Jones, Jr. taken by Richard Ogden August 21, 2002;

5.    Equipment or Facility Report of Inspection of SHPX 201016, dated August 16, 2002;

6.    Records from the Railroad Retirement Board, Railroad Retirement Board, O'Brien Federal Building, Room 264,P.O. Box 529, Albany, NY 12201;

7.    Photos taken by Thomas Tozzer, August 16, 2002;

8.    Photos taken by Richard Ogden August 21, 2002;

9.    Job application of plaintiff, including resume, dated March 7, 2001;

10.    United States Marines Personnel Records;

11.    United States Marines Medical Records;

12.    General Code of Operating Rules, Fourth Edition, effective April 2, 2000;

13.    RailAmerica, Inc. Transportation Safety Rules & Recommended Work Guidelines, effective February 1, 2002;

14.    RailAmerica, Inc. Transportation Safety Procedures, effective February 1, 2002;

15.    Employee Assistance Program documents, Group Life Insurance information, RailAmerica, Inc. and Participating Subsidiaries insurance information and Group Long Term Disability information;

16.    The plaintiff's taxes and W-2's from 2000 to present;

17.    Defendant reserves the right to introduce records from the Plaintiff's treating physicians, nurses, therapists, medical treatment providers, and other medical professionals regarding his treatment for injuries allegedly suffered as the incident which is the subject of his complaint, as well as any and all pre-existing conditions or injuries, including but not limited to:

    a.    Records from Northwestern Medical Center including but not limited to:

        i.   the ER records dated 6/10/02;

        ii.  Dr. Beattie's History and Physical dated 10/15/02;

    b.    Records from Northwestern Medical Center Rehabilitation Services including but not limited to:

        i.  Discharge summary dated June 9, 2003;

    c.    Records from Hendry Regional Rehabilitation Services;

    d.    Records from Dr. Long; 3 Crest Road, St. Albans, VT;

    e.    Records from Dr. Beattie; Northwestern Medical Center, 133 Fairfield St., St. Albans, VT;

18.    Receipts for cash advances to the plaintiff.

**2.    <u>Those Which the Defendant May Offer if the Need Arises</u>:**

1. Personnel records of the plaintiff from South Central Florida Express (not yet obtained);

2. Safety shoe agreements signed by the plaintiff dated 4/20/01 and 4/29/02;

3. Employee acknowledgement form of safety rules, signed by the plaintiff;

4. Florida workers' compensation Uniform Medical Treatment/Status reporting form, signed by Dr. Mikolajczak dated September 24, 2004

5. Email messages;

6. statements of Tom Tozzer, Brad Ovit and Nathaniel Cobb.

The defendant reserves the right to use any of the documents, data compilations and tangible things identified and/or produced by the plaintiff and incorporates herein by this reference the documents, data compilations and tangible things set forth in the plaintiff's disclosures. The defendant also reserves the right to supplement its list of documents, data compilations and tangible things prior to trial.

Defendant reserves the right to supplement this *Memorandum* its objections as to the plaintiff's exhibits, as the plaintiff failed to provide his *Pre-Trial Disclosures pursuant to local rule 16.5 and Fed.R.Civ. P. 26(a)(3).*

XII.    **PROPOSED JUY INSTRUCTIONS, SPECIAL VERDICT FORM OR SPECIAL INTERROGATORIES:**

These have already been filed under separate cover.

Respectfully submitted,

The defendant,
NEW ENGLAND CENTRAL RAILROAD,
by its attorneys,

/s/ Michael B. Flynn
Michael B. Flynn, BBO# 559023
*mbflynn@flynnassoc.com*
Valerie A. Murphy, BBO #661460
FLYNN & ASSOCIATES, PC
400 Crown Colony Drive, Suite 200
FLYNN & ASSOCIATES, PC
Quincy, MA 02169
(617) 773-5500

Dated:  July 21, 2006
G:\F & A\CASE FILES\RAILAMERICA\New England Central\JONES, RICKEY A\pleadings\NECR's joint pre-trial memo.doc