UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

---

RICKEY A. JONES,
                Plaintiff,

      v.

NEW ENGLAND CENTRAL RAILROAD,
INC.,
                Defendant.

Civil Action No.: 04-11772-MAP

---

## NEW ENGLAND CENTRAL RAILROAD, INC.'S MOTION IN LIMINE TO EXCLUDE PHOTOGRAPHS

The New England Central Railroad, Inc. ("NECR") moves in limine that this Honorable Court exclude from evidence certain photographs taken by the plaintiff in late September or October 2002 which allegedly depict the condition of the NECR's St. Alban's yard. As grounds therefore, the NECR states that the photographs do not fairly and accurately depict the condition of the yard as it existed at the time and place of the plaintiff's accident.

### I. FACTUAL BACKGROUND:

The NECR refers to and specifically incorporates herein by this reference the "Factual Background" section of its *Motion in Limine to Exclude Plaintiff's "Design Defect" Theory*.

The plaintiff took a number of photographs of the NECR's St. Albans yard in late September or October 2002. *See* transcript of the plaintiff's deposition, the relevant portions of which are attached as Exhibit "A," at p. 278. Copies of these photographs are attached as Exhibit "B." The photographs do not depict conditions in the yard as they existed in August 2002. By the plaintiff's own admission, the yard had been substantially reconstructed between the date of the alleged accident and the date he took the photographs. Exh. A, at p. 286.

Moreover, the conditions the photographs purportedly show (rotten grain, oil and grease) are transient – there is no reasonable assurance that these conditions, as shown in the photographs, existed on August 15, 2002.

## II.    **DISCUSSION OF LAW:**

The images depicted on the photographs which the plaintiff will seek to introduce into evidence do not depict the scene of his accident as it existed at the time the accident occurred. As such, these photographs will not have any tendency to make the existence of any fact that is of consequence to the determination of this action more probable or less probable than it would be without the evidence, therefore the photographs are irrelevant. Fed. R. Evid. 401. Photographs which are not a fair and accurate representation of a subject condition at the time of the alleged accident are inadmissible. Marino v. Town of Andover, 1994 Mass. Super Lexis 177; Henderson v. D'Annolfo, 15 Mass. App. Ct. 413, (1983).

Even if the court finds that the images are relevant, the photographs still must be excluded because their probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury against the NECR. Fed. R. Evid. 403. This evidence will be unfairly prejudicial to the NECR because it may cause the jury to base its decision on the condition of the yard instead of the how the plaintiff's foot "slipped" from the stirrup. *See* Carter v. Hewitt, 716 F.2d 961, 972 (3d Cir. 1980). The balancing of the unfair prejudice and probative value lies within the district court's discretion. United States v. Larios, 640 F.2d 938, 941 (9th Cir. 1981).

**A.    After The Date Of The Plaintiff's Alleged Injuries And Before The Plaintiff Took The Photographs, The NECR Reconfigured The Yard, Therefore The Photographs Do Not Depict That Which Was Present In The Yard At The Time Of The Plaintiff's Alleged Incident:**

The NECR "re-worked" its entire St. Alban's yard, which included a "new tie job," between August 15, 2002 and the date on which the plaintiff took his photographs in late September or October 2002.  Exh. A, at 286.  The yard was thus in a different state or condition at the time that the photographs were taken than when his accident occurred.  Since the yard was "re-worked," that which is depicted in the photographs did not exist at the time of the plaintiff's accident.

The images contained in the photographs should have no consequence to the determination of this action since the images did not exist at the time of the plaintiff's accident. The images captured in the photographs were obtained after the yard was re-done, which included an entire tie job, therefore the conditions which existed on August 15, 2002, were not captured within the photographs to be offered by plaintiff making the photographs irrelevant to the proof of the plaintiff's case.  Therefore, these photographs must be excluded from evidence in the trial of this matter.

**B.    The Conditions Shown in the Photographs Did Not Exist at the Time of the Plaintiff's Accident:**

The plaintiff's photographs purportedly show the presence of the substances he claims were "everywhere" in the NECR's yard at the time of his accident. Yet, these substances – oil, grease and rotten feed – are all transient in nature (they either dry up, degrade, disperse or absorb into the earth).  Therefore, there can be no reasonable assurance that these substances were present at the time of the plaintiff's accident and, for this reason alone, the plaintiff's photographs must be excluded.

**C.**    **The Photographs Do Not Show the View Where the Plaintiff's Accident Occurred:**

The plaintiff's August 15, 2002 accident allegedly occurred on or around tracks No. 108 and 109. Many of the photographs the plaintiff took depict different tracks in completely different locations of the yard. Exh. A at p. 277-289; see also Exh. B. Since the photographs do not show the location of the plaintiff's accident, they are not relevant and are, therefore, inadmissible.

### III.    CONCLUSION:

WHEREFORE, for all the above stated reasons the within motion should be allowed and the plaintiff should be prohibited from introducing said photographs into evidence.

Respectfully submitted,

The defendant,
NEW ENGLAND CENTRAL RAILROAD, INC.,
by its attorneys,

 /s/ Michael B. Flynn
Michael B. Flynn,     BBO #559023
Valerie A. Murphy,    BBO #661460
FLYNN & ASSOCIATES, P.C.
400 Crown Colony Drive, Suite 200
Quincy, MA 02169
(617) 773-5500

Dated: July 21, 2006
G:\F & A\CASE FILES\RAILAMERICA\New England Central\JONES, RICKEY A\pleadings\Motion in Limine - Photographs.doc

Exhibit "A"

1

Volume I, Pages 1-319

Exhibits 1-11R

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS


* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

RICKEY A. JONES                          *

        Plaintiff                    *

vs.                                      * No. 04-11772-MAP

                                     *

NEW ENGLAND CENTRAL RAILROAD, INC.*

        Defendant                    *

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

DEPOSITION OF:  RICKEY A. JONES

FLYNN & ASSOCIATES, P.C.

400 Crown Colony Drive, Suite 200

Quincy, Massachusetts

November 1, 2005   9:30 a.m.-3:50 p.m.


-----REPORTED BY: CHRISTINE SILVA-ADERMANN/RPR-----

BEACON HILL REPORTING

44 Bayswater Street

Boston, Massachusetts

617.569.8050    Fax 617.569.8150

**278**

```
 1    Q.  So it was sometime in the fall of 2002?
 2    A.  I think it was late or sometime around
 3  September/October, maybe late.
 4    Q.  The grain you say was on the bottom of your
 5  foot at the time you slipped, where did you get that
 6  on your boot as best you can recall?
 7    A.  On what track you mean?
 8    Q.  Yeah.
 9    A.  I think it was 108 or 109.  It's all over
10  the place.
11    Q.  Do any of these photographs that you took
12  show the area around track 108 where you say you got
13  the grain on your foot at the time of the accident?
14    A.  Yes, sir.
15    Q.  Show me which one.  Keep those in order.
16      MR. MYERS:  Are they numbered?
17      MR. FLYNN:  No.  We'll keep them in
18  order.  When we get done, we'll number them 11A
19  through --
20      MR. MYERS:  Whatever the last letter is.
21    A.  I think this is 107 or 108.
22      MR. FLYNN:  Why don't you, we'll do
23  this, this is going to be marked as 11C.
24      MR. MYERS:  There is 18 pages so it
```

**279**

```
 1  would be R.
 2      MR. FLYNN:  I don't even know.
 3    A.  This one here shows you the oil.  That's
 4  motor oil there.
 5    Q.  That's on the switch itself?
 6    A.  If you see a different picture later on,
 7  it's actually down in the switch.
 8    Q.  Why did you take these pictures anyway?
 9    A.  Because I was afraid they were fixing to
10  fire me.
11    Q.  Did anyone tell you to take these pictures?
12    A.  No.
13    Q.  Which one shows where the oil is?
14    A.  This is all grain here.
15    Q.  Do you know what track that is on, 11B?
16    A.  I think that's track 18 or 19.
17    Q.  You weren't there that night, were you?
18    A.  Yeah.  I'm all over the yard.
19    Q.  Do you recall being at that --
20    A.  Yeah.
21    Q.  Remember earlier I asked you where you were
22  on the tracks that night?
23    A.  I'm all over the tracks.  Because we had to
24  set up for Cargill that night which that is on track
```

**280**

```
 1  118.  I had to set up for Fonda.  They're on track
 2  118 and 119.
 3    Q.  What else are you showing me?
 4    A.  This is more rotten grain in the gauge, out
 5  of the gauge, in the gauge, out of the gauge.  Same
 6  as there.
 7    Q.  11D?
 8    A.  Got rotten grain outside the gauge here, in
 9  and out.  Same as here.  This is outside the gauge.
10    Q.  That's 11E.
11    A.  I think this here, this is track 108.  This
12  is where I had to come get the cars, if I'm not
13  mistaken.  And this is rotten grain in the gauge,
14  and you got knee-deep mud all the way down there.
15    Q.  That's 11F.  Did you actually walk in the
16  mud that night?
17    A.  You walk --
18    Q.  You are not claiming that walking in mud
19  caused you to slip and fall?
20    A.  No.  This is the condition of the yard.
21    Q.  I just want to get to these conditions that
22  you fell on.  Hold on a second.  I'm looking at
23  picture 11F.  The picture in the bottom left-hand
24  corner of 11F shows track 108 where you made --
```

**281**

```
 1    A.  107 or 108.  I can't tell by the way the
 2  picture is taken.
 3    Q.  Well, is this the area where you made the
 4  -- where you cut out those cars?
 5    A.  Let me see it quick.  Trying to remember
 6  how the tracks go.  Actually this was 107.  I wasn't
 7  on that track.  This one here is 108 because I took
 8  my boot off to show how big the pile was.
 9    Q.  This is 11G.  Now, is this track 108 in the
10  area where you made the cut?
11    A.  Yes, sir.  It runs roughly 15, 20 feet long
12  down the track.
13    Q.  So this is the exact area on 11G the track
14  where you made the cut?
15    A.  Yes, sir.
16    Q.  And what you did to make the cut is you
17  pulled the cutting lever?
18    A.  Actually, no, that's where I picked up the
19  cars.  Yeah, it is.  Had to be 108.
20    Q.  So this is where you cut off this tank car
21  from the other cars that were attached to it?
22    A.  No.  That's where you made the hitch.  You
23  had to get in between and put your boot in it to
24  lace them up.
```

Rickey A. Jones
November 1, 2005

(Pages 286 to 289)

---

**286**

1    A. They had taken out the entire yard after I
2 got hurt. They did a whole new tie job and redid
3 everything.
4    Q. So you don't know where this is?
5    A. With the boxcar there, it was probably on
6 the upper lead so probably 18, 19, 20.
7    Q. All right.
8    A. This right here is just showing the depth
9 of the ruts right there. I don't know what the
10 picture of the 8 switch is for.
11    Q. You don't know why you took the picture of
12 8 switch?
13    A. No.
14    Q. Because it looks like it was in pretty good
15 condition?
16    A. Yeah. There is no problem with it.
17    Q. The one shown in -- the 8 switch is shown
18 in 11Q; right?
19    A. Yeah.
20    Q. There is no problem with the 8 switch?
21    A. Not that I can remember.
22    Q. Nine switch is shown in 11R?
23    A. Correct.
24    Q. There is no problem with that switch

---

**287**

1 either; correct?
2    A. Not that I can remember.
3    Q. Would you agree with me through all these
4 pictures that the grain unlike -- first of all, one
5 picture you identified as being 11C where you
6 identified the track where you said you made the tie
7 in or you laced the cars together; right?
8    A. Correct.
9    Q. Those grease streaks aren't there on that
10 track?
11    A. Well, you couldn't tell. I mean, there is
12 a big pile of grain there.
13    Q. You can't see from these photographs those
14 grease streaks that were out on the lower lead;
15 correct?
16    A. No. But I can see them on this picture.
17 That's in the track.
18    Q. The grain, the rotten grain, that's
19 dispersed intermittently throughout the yard in
20 these pictures; correct?
21    A. Yeah. Piled like that.
22    Q. You certainly can avoid these?
23    A. No, sir.
24    Q. You are saying you couldn't avoid it

---

**288**

1 because you had to get in between the rails to make
2 the ties?
3    A. It all depends on where the joints are cut
4 at.
5    Q. First of all, where your boot is, you are
6 saying that's the exact location where you laced
7 those cars together?
8    A. No. I'm say that's how big the pile is.
9 I'm showing you the size of my foot.
10    Q. Well, where's the picture of the area where
11 you actually laced cars together?
12    A. That's the area right here.
13    Q. Is this what you stepped in?
14    A. Correct.
15    Q. The upper left-hand photograph?
16    A. Correct.
17    Q. And you're saying you stepped in this stuff
18 because you had to go between the cars to tie them
19 together?
20    A. Correct.
21    Q. Why did you have to do that?
22    A. Because I had a whole train there. You
23 couldn't drag it out to keep from getting --
24    Q. No. Aren't you supposed to stay away from

---

**289**

1 -- aren't you prohibited from going between the cars
2 during switching operations?
3    A. No. I just made it to get those cars. I
4 had to lace the air.
5    Q. Put the airs hoses together?
6    A. Yes.
7    Q. You couldn't do that from outside the
8 gauge?
9    A. No, sir.
10    Q. You had to go between the cars to do that?
11    A. Yes. The one hose is on your side. The
12 other hose is on the other side.
13    Q. Could you have stepped up on the cars to do
14 that?
15    A. No, sir.
16    Q. You have to do that from the ground?
17    A. Correct. It's physically impossible.
18       MR. FLYNN: Request is made for the
19 actual color copies of these, okay, Bob?
20       MR. MYERS: Sure.
21    Q. Do you have any other photographs that
22 you've taken?
23    A. I believe that's it.
24    Q. Did you take any video or anything else?

---

**Beacon Hill Court Reporting, Inc.**
**(617) 569-8050**

# EXHIBIT B




























































