COFFEY KAYE MYERS & OLLEY
BY:  Robert E. Myers, Esquire
Attorney I.D. No. 23762
Two Bala Plaza, Suite 718
Bala Cynwyd, PA 19004
(610) 668-9800                                                                    Attorneys For:  Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICKEY A. JONES,<br>　　　　　Plaintiff<br><br>　　v.<br><br>NEW ENGLAND CENTRAL<br>RAILROAD, INC.,<br>　　　　　Defendant | Civil Action No. 04-11772-MAP |

### PLAINTIFF'S PORTION OF FINAL PRETRIAL MEMORANDUM

**<u>Plaintiff attempted to work with Defendant's counsel to prepare a joint pretrial order.  Counsel for defendant informed plaintiff's counsel that she had no additional time to work on it Thursday, would be unavailable on Friday, and therefore plaintiff should file his own document.  Plaintiff's counsel remains available to prepare the joint document ordered by the Court.</u>**

I.　　A concise statement of the evidence that will be offered all parties with respect to both liability and damages (including special damages, if any):

　　A.　　<u>Liability</u>:

On April 15, 2002 Plaintiff, Rickey A. Jones, was employed by the Defendant as a utility engineer/conductor.  He was working at the "Italy" Yard in St. Albans, Vermont, in the area of Track 109, Switch 109, at approximately Mile Post 0.8.  He began his tour of duty at approximately 3:00 p.m. on that date.  As part of his work responsibilities, Plaintiff was required

to work on and about various types of railroad equipment and was further required to walk on and around the aforementioned Italy Yard.

At approximately 5:00 p.m. the draft of cars on which Plaintiff was riding pulled onto Track No.109. After the train stopped, it was necessary for Plaintiff to detrain from the back of the car. Unlike the middle of the railroad car where there was a ladder present for the use of the rail workers, this particular car merely had a slippery pole at the end of the car. The Plaintiff had to use both hands to shimmy down this pole in order for the Plaintiff to move his feet lower to eventually place his left foot in what's called a "stirrup" or the bottom rung to detrain. The "stirrup" is approximately 2-1/2 feet above the ground but underneath the car to the extent where it cannot be seen from the position when an individual has his hands on the pole climbing down, as was the Plaintiff in this case. Ultimately the Plaintiff was able to extend his left foot underneath the car and placed onto the stirrup, but unfortunately, because of its unusual positioning, his left foot was forced to be pointed in an upward position. While Plaintiff was attempting to climb off the car, his left foot slipped off the stirrup and Plaintiff's hands slipped down this pole and he was unable to prevent his fall onto the ground. When Plaintiff fell, his right leg absorbed most of the impact from the fall as he struck the ground. Plaintiff felt immediate pain and discomfort in his right leg.

Unfortunately the Defendant kept its rail yard in a horrendous condition. For example, instead of using required graphite to grease the metal switches, the employees used old burnt motor oil on the switches instead. Over a long period of time, the railroad had accumulated numerous and huge puddles of this oil and other types of grease throughout the yard on the walking surfaces. The Defendant also utilized old engines to move other cars within the yard and because of their old and worn out condition they spit oil onto the ground as well. The

walking surface of the yard was composed of a rocky surface called "ballast" that was composed of different sized pieces of rock that roll, give way with water seepage and are very slippery when covered with oil, grease, water, rotten grain, lithium grease and other slippery substances.

There is also a mixture of a powdery substance on the cars which, when mixed with water, creates a slurry or slippery condition on various parts of the cars including the poles, stirrups, as well as the other parts of the cars. The Defendant has a long history of not cleaning or maintaining a safe yard and cars, unfortunately, Plaintiff accumulated these greasy substances on the bottom of his shoes that affected his ability to climb down the pole and place his left foot in the stirrup safely and the pole was also slippery, causing his hands to slip to the point where he was unable to use his hands to prevent his body from falling to the ground.

Defendant violated the Federal Employers' Liability Act in that it failed to inspect and/or to remove the dangerous conditions on the ground, it failed to inspect or remove the dangerous conditions on the pole, the stirrup and other parts of the car and other cars in question; it failed to discover the presence of grease, oil, slurry and/or other substances and/or remove the accumulated water or generally eliminate the unsafe ground conditions in the yard itself. The railroad failed to properly maintain the stirrups and grab irons in a safe condition in that they failed to eliminate these dangers on the rail car in question.

B.  **Damages**:

Plaintiff reported his injuries to his supervisors. After a long delay caused by his supervisors, Plaintiff was eventually removed from the yard and transported to Northwestern Medical Center and received emergency care to his right leg and back. He was given medication and placed on crutches and referred to Raymond A. Long, M.D., an orthopedic surgeon.

Dr. Long ordered an MRI that revealed that the Plaintiff suffered a medial meniscal tear and bony bruising of the tibia plateau as well as an anterior cruciate ligament tear of the right knee. Plaintiff was referred to Robert Beattie, M.D., who is one of his treating orthopedic surgeons who will also testify as an expert in this case. Dr. Beattie diagnosed Plaintiff's injuries as right knee tear of the anterior cruciate ligament and medial meniscal tear in his right knee. Ultimately, Dr. Beattie performed a right knee laparoscopic anterior cruciate ligament reconstruction, a hamstring tendon and arthroscopy of the medial meniscal repair as well as a partial medial meniscectomy. After surgery Plaintiff was braced and referred to physical therapy.

Ultimately Plaintiff was released to try to attempt to work, which he did for approximately four months. Unfortunately, this was unsuccessful due to the great pain and discomfort in his right knee as well as the limitation of the movement of his knee and leg caused by the injuries Plaintiff sustained in this case. Dr. Beattie ultimately prescribed and conducted injection therapy to his right knee, which unfortunately failed as well.

Later, the Plaintiff moved to Clewiston, Florida and came under the care of Michael Mikolajczak, D.O., from The Center for Bone and Joint Surgery. Dr. Mikolajczak is a board certified orthopedic surgeon. Plaintiff was ordered to undergo an additional MRI of the right knee. The MRI of the right knee revealed that he had a relatively intact anterior cruciate ligament graph with suspected donor site at the pole of the patella ligament as well as a partial meniscectomy involving the posterior horn of the medial meniscus. There was also a suspicion of a retear of the medial meniscus, and Dr. Mikolajczak recommended exploratory surgery.

On February 26, 2004 Dr. Mikolajczak performed an arthroscopy of the right knee, a chondroplasty of the medial femoral condoyle and patellar femoral joint per grades 2-4

osteocondral defects, as well as a partial medial meniscectomy of about 20 percent posterior horn partial synovectomy. Essentially there was a retear of the postural horn of the meniscus tear with approximately 20 percent involvement that was performed by Dr. Mikolajczak along with a tightening of the ACL reconstruction site.

Plaintiff underwent post surgerical rehabilitation, bracing and subsequent injections in his right knee as well. Dr. Mikolajczak last saw the Plaintiff on June 19, 2006 and noted the Plaintiff was still having problems with his right knee, crepitation with joint line tenderness and muscle atrophy and scant effusion. Both treating physicians, Dr. Beattie and Dr. Mikolajczak, not only had similar diagnoses of Plaintiff's injuries but they opined that the Plaintiff's injuries were caused or exacerbated by the accident in question and other than a four month trial return to work was disabled from his employment. They have both released the Plaintiff to perform light and sedentary work.

The Plaintiff looked for alternative employment and ultimately in April of 2005 was able to obtain a job as a parts salesman for Original Equipment Company in Clewiston, Florida, and is currently earning $8.50 per hour. The Plaintiff works between 40 and 45 hours per week. The Plaintiff does not receive any medical, dental and/or other health benefits from this position.

Cathy McVay, a Certified Disability Management Specialist, Senior Disability Analyst and Diplomate State of Florida Qualified Rehabilitation provider, interviewed the Plaintiff and performed various tests and reviewed his earnings data, along with other material, and ultimately opined that the Plaintiff was, in fact, disabled from his railroad employment and had sustained a loss of earning capacity as a result of the injuries and permanent physical restrictions caused by the accident in this case. She recommended vocational rehabilitation

training and further opined that he would sustain an annual wage loss of approximately $14,300 in differential and potential earnings that he earned from the railroad and earned subsequently or could earn in the future.

Plaintiff engaged Andrew G. Verzilli, Ph.D., an Economist, to calculate the present value of the difference in potential earning capacity relative to Plaintiff in this case. Dr. Verzilli opined that Plaintiff was born November 17, 1974 and was injured on August 15, 2002 at age 27. Dr. Verzilli performed his forensic economic evaluation on January 12, 2006 when the Plaintiff was 31 years of age, noting that the Plaintiff had a statistical life expectancy of an additional 45.8 years. Dr. Verzilli noted that the Plaintiff has sustained estimates of the difference in potential earning capacity to age 62 from $860,000 to $1,200,000; to age 67 from $940,000 to $1,394,000; to age 70 from $983,000 to $1,500,000. Plaintiff also claims damages for past and future pain and suffering.

II.  A statement of facts established by the pleadings, by admissions or by stipulations. <u>Counsel shall stipulate to all facts not in genuine dispute:</u>

1. Plaintiff is Rickey A. Jones currently residing at 407 Desoto Avenue, Clewiston, Florida 33440.

2. Plaintiff's date of birth is November 17, 1974.

3. Plaintiff's Social Security is 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.

4. Plaintiff's date of hire with New England Central Railroad was April 2, 2001. as a utility engineer/conductor.

5. Plaintiff claims that his date of accident was August 15, 2002.

   *Defendant disputes this claim.*

6. Plaintiff was a member of the United Transportation Union on the day of the accident.

7. Defendant's corporation is duly organized and existing under and by virtue of the

laws of one or more states of the United States of America and does business in the District of Massachusetts.

8. At the time and place hereinafter mentioned and for a long time prior thereto, the

   Defendant, as a common carrier, operated trains carrying passengers, freight, express packages, baggage and foreign and domestic mail in commerce between the different states of the United States and its territories.

9. The Defendant took statements of Brad Ovitt, Nathaniel Y. Cobb, Michael L. Lawyer and Thomas Tozzer, all of which have not been produced to Plaintiff's counsel in this case. (See Defendant's Response to Plaintiff's Interrogatory #1.)

10. Plaintiff's incident was reported to William L. Magee on August 15, 2002. (See Defendant's Response to Plaintiff's Interrogatory #2.)

11. Nathaniel Cobb was working as the engineer on the PM switcher job with the Plaintiff on the date in question.

12. Kevin Bushy was the conductor working with the Plaintiff on the date in question. (See Defendant's Response to Plaintiff's Interrogatory #6.)

13. Plaintiff returned to work from March 24, 2003 until July 14, 2003.

14. The Plaintiff was paid at a rate of $15.15 per hour as of December 1, 2003. (See Defendant's Response to Plaintiff's Interrogatory #8.)

15. The Plaintiff resigned from the Defendant on November 8, 2001.

16. The Plaintiff resumed employment with the Defendant on April 28, 2002. (See Defendant's Response to Plaintiff's Interrogatory #9.)

17. The Plaintiff's earnings were as follows:
    | Year | Earnings |
    | --- | --- |
    | 2000 | $39,933 |
    | 2001 | $43,530 |
    | 2002 | $37,210 |
    | 2003 | $35,059 |
    
    (Plaintiff did not work full years during 2002 and 2003.)

18. The Plaintiff attended Clewiston High School in Clewiston, Florida and graduated in May of 1994.

19. In August 1996 he joined the United States Marine Corps and was discharged two years later on a medical discharge in 1998.

III.    Contested Issues of Fact:

Plaintiff respectfully incorporates those facts set forth in Section Roman Numeral I above.

IV.    Any Jurisdictional Questions:

None.

V.    Any Question Raised by Pending Motions:

As far as Plaintiff is aware, there are no pending motions. Plaintiff anticipates filing Motions in Limine regarding irrelevant and inadmissible material that was brought up during the Plaintiff's deposition. Plaintiff will object to any testimony concerning Plaintiff's prior assault in the United States Marine Corps for which no criminal charges were pressed by the government. The Plaintiff will also anticipate filing a Motion in Limine with regard to all railroad retirement and all other collateral estoppel benefits received by the Plaintiff in this case. Plaintiff will also anticipate filing a Motion in Limine with regard to any surveillance films, investigations and photographs and surveillance films that have not been produced as of this date. Plaintiff will object to any and all irrelevant and/or prejudicial material incorporated by defendant's experts in their expert reports in this case. The Plaintiff reserves the right to supplement and the right to file motions with regard to any other matters or materials otherwise subsequent to this time period.

VI.    Issues of law, including evidentiary questions, together with supporting authority:

Plaintiff is unaware of any unusual issues of law.

VII.    Any requested amendments to pleading:

None.

VIII.    Any additional matters to aid in disposition of the case:

Plaintiff is aware of none.

IX.    The probable length of trial and whether jury or non-jury:

This is a jury trial that will take approximately 5 full trial days.

X.    A list of the names and addresses of witnesses who will testify at trial and the purpose of the testimony:

    1.    The Plaintiff, Rickey A. Jones
          407 Desoto Avenue
          Clewiston, Florida.

The Plaintiff will testify as to all matters regarding both liability and damages in this case. The Plaintiff will testify as to how the accident happened, the injuries he sustained, the medical treatment he underwent, as well as the vocational significance of his injuries; obtaining gainful employment outside the railroad; loss of life's pleasures and other activities and other issues regarding his physical injuries; loss of past and future earning capacity, as well as past and future pain and suffering.

The following employees of the railroad on cross-examination:

2. Nathaniel Cobb, Engineer
   c/o the Defendant

3. Kevin Bushy, Conductor
   c/o the Defendant

The two individuals above will testify to the facts concerning the conditions of Defendant's rail yard, as well as the accident in question. They will also testify as to prior complaints with regard to the ground conditions and other working conditions in the yard itself and produce any records, photographs and/or writings of any kind with regard to the aforementioned conditions.

4. Larry Laroux (Loux?)
   c/o the Defendant and Union Representative
   and/or other Union Representatives

This individual will testify to the facts concerning the conditions of Defendant's rail yard, as well as the accident in question. He will also testify as to prior complaints with regard to the ground conditions and other working conditions in the yard itself.

5. Personnel of:
   Northwestern Medical Center Rehabilitation Services
   P. O. Box 1370
   St. Albans, Vermont 05478

The witness(es) will testify as to the authenticity of medical records.

6. Personnel of:
   Northwestern Medical Center
   156 Fairfield Street
   St. Albans, Vermont 05478

The witness(es) will testify as to the authenticity of medical records.

7. Robert N. Beattie, M.D.
   Doctors Office Common
   3 Crest Road
   St. Albans, Vermont 05478

Dr. Beattie was Plaintiff's treating physician who will also testify as an expert in this case. Dr. Beattie both treated and performed surgery on the Plaintiff and has rendered

opinions with regard to Plaintiff's diagnosis, causation, disability, future limitations, the reasonableness and necessity of his medical care, as well as Plaintiff's pain and suffering.

8. Michael Mikolajczak, D.O.
   The Center for Bone and Joint Surgery
   10131 W. Forest Hill Boulevard, Suite 206
   West Palm Beach, Florida 33414

Dr. Mikolajczak was Plaintiff's treating physician who will also testify as an expert in this case. Dr. Mikolajczak both treated and performed surgery on the Plaintiff and has rendered opinions with regard to Plaintiff's diagnosis, causation, disability, future limitations, the reasonableness and necessity of his medical care, as well as Plaintiff's pain and suffering.

9. Raymond A. Long, M.D.
   3 Crest Road
   St. Albans, Vermont 05478

Dr. Long was Plaintiff's treating physician who will also testify as an expert in this case. Dr. Long both treated and performed surgery on the Plaintiff and has rendered opinions with regard to Plaintiff's diagnosis, causation, disability, future limitations, the reasonableness and necessity of his medical care, as well as Plaintiff's pain and suffering.

10. Personnel of:
    Hendry Diagnostic Imaging Center, Inc.
    1008 W. Sidemore Avenue
    Clewiston, Florida 33440

The witness(es) will testify as to the authenticity of MRI examination.

11. Andrew G. Verzilli, Ph.D.,
    Economist
    Verzilli & Verzilli and Consultants, Inc.
    411 N. Broad Street
    Lansdale, PA 19446

Dr. Verzilli is the Plaintiff's Economist. Dr. Verzilli's testimony concerns his opinions regarding Plaintiff's difference in potential earning capacity relative as a result of Plaintiff's injury in this case. Dr. Verzilli has rendered his opinions regarding Plaintiff's past and future wage loss to various ages as well as utilizing different discount rates. Dr. Verzilli utilized present value calculations.

12. Cathy McVay, CDMS, SDAD, QRP
    Certified Disability Management Specialist
    Senior Disability Analyst and Diplomate
    State of Florida Qualified Rehabilitation Provider
    1340 U.S. Highway 1, Suite 102
    Jupiter, Florida 33469

This witness is Plaintiff's Vocational Expert. Ms. McVay will testify with regard to the effect of Plaintiff's injuries on his pre and post vocational potential and how the accident,

injuries and permanent and disabling injuries have affected his ability to work and what kinds of work would be available to him in the workplace in the future.

13. Representative of:
    Palms Wellington Surgery Center
    460 State Road 7
    Palm Beach, Florida 33411
The witness will testify as to the authenticity of medical records.

14. Northwestern Medical Center, Inc.
    156 Fairfield Street
    St. Albans, VT 05478
    Diagnostic Imaging Report
    c/o Luis Gonzalez, M.D.
The witness will testify as to the authenticity of diagnostic imaging report.

15. Representative of:
    Deborah R. Hellinger, D.O. c/o The Hendry Diagnostic Imaging Center, Inc.
    1008 W. Sagamore Avenue, Clewiston, Fl 33440
    MRI Report of right knee 01/12/04
The witness will testify as to the authenticity of MRI examination.

16. Representative of:
    The Hendry Diagnostic Imaging Center, Inc.
    1008 W. Sagamore Avenue
    Clewiston, FL 33440
    MRI Report of the left knee 8/11/03
The witness will testify as to the authenticity of MRI examination.

17. Walter Wagenknecht, M.D.
    c/o Northwestern Medical Center
    X-rays of the right knee 12/10/02
The witness will testify as to the authenticity of medical records/x-rays.

18. Walter Wagenknecht, M.D.
    c/o Northwestern Medical Center
    X-rays of the left knee
The witness will testify as to the authenticity of medical records/x-rays.

19. Nancy Hickey, M.D.
    c/o Northwestern Medical Center
    Emergency Room Physician
The witness will testify as to the authenticity of medical records.

20. Representative of:
Northwest Vermont Health Services
The witness will testify as to the authenticity of medical records.

21. Representative of:
Northwestern Occupational Health
Cobblestone Health Commons
260 Crest Road, Suite 101
Clewiston, FL 33440
The witness will testify as to the authenticity of medical records.

22. D. Dunsmore, PT
and Other Members of the Physical Therapy Staff
The witness(es) will testify as to the authenticity of medical records.

23. Nimia Reyes, PT
Hendry Regional Rehabilitation Services
121 Central Avenue
Clewiston, Florida
The witness will testify as to the authenticity of medical records.

24. Plaintiff's Family and Friends
Plaintiff's family and friends will testify with regard to Plaintiff's physical, emotional and mental condition, both prior to and subsequent to the accident in this case. Plaintiff's family and friends will testify with regard to plaintiff's inability to perform various family, social and work activities an, how the accident in the present case affected Plaintiff's life's pleasures.

XI. A list of the proposed exhibits to be offered at trial. Counsel shall distinguish those exhibits to be introduced without objection from those to be introduced with objection.

    1. Photographs of the accident site and conditions of the rail yard.

    2. A diagram of Italy Yard (produced by the Defendant in this case).

    3. Medical records, reports and bills from Northwestern Medical Center Rehabilitation Services.

    4. Raymond Long, M.D.
       a. Curriculum Vitae
       b. Records and Reports
       c. Transcript of Dr. Long's trial testimony and accompanying exhibits
       d. Video tape of trial testimony and accompanying exhibits

5.  Northwestern Medical Center.

6.  Robert Beatti, M.D.
    a.  Curriculum Vitae
    b.  Records and Reports
    c.  Transcript of Dr. Beatti's trial testimony and accompanying exhibits
    d.  Video tape of trial testimony and accompanying exhibits

7.  Michael Mikolajczak
    a.  Curriculum Vitae
    b.  Records and Reports
    c.  Transcript of Dr. Mikolajczk's trial testimony and accompanying exhibits
    d.  Video tape of trial testimony and accompanying exhibits

8.  Hendry Diagnostic Imaging Center, Inc.

9.  Hendry Regional Rehab Services.

10. Northwestern Occupational Health.

11. Reports and records of Cathy McVay, CDMS, SDAD, QRP
    a.  Curriculum Vitae
    b.  Report of 12/12/05
    c.  Report of 1/06/06

12. Reports, records, charts, etc. of Andrew G. Verzilli, Ph.D.
    a.  Curriculum Vitae
    b.  Report of 1/12/06
    c.  Supplemental report
    d.  Charts and graphs

13. Defendant's payroll records of the Plaintiff (produced by the Defendant)

14. Plaintiff's W-4 form for 2001

15. Plaintiff's W-4 form for 2002

16. The Hendry Diagnostic Imaging Center, Inc.
    MRI Report of the left knee 8/11/03
    Luis Gonzalez, M.D.

17. The Hendry Diagnostic Imaging Center, Inc.
    MRI Report of right knee 1/12/04

    18.    Northwestern Medical Center, Inc.
            Diagnostic Imaging Report
            Luis Gonzalez, M.D.

    19.    Present Value Tables

    20.    Life Expectancy Tables

    21.    Reports and other records from Original Equipment Company, Clewiston, Florida

    22.    Plaintiff objects to any records, photographs, video tapes and/or writings of any kind from defendant and/or its employees with regard to any slippery conditions of the yard, tracks and rail equipment.

    23.    Plaintiff objects to Defendant's use of railroad retirement or workmen's compensation claim records and reports, written statements considered as hearsay, transcriptions of tape recorded statements of several potential witnesses that have never been produced to the Plaintiff, exemplar of a railroad car as noted in Defendant's pretrial submissions, photographs and/or videotapes of the accident scene taken subsequent to the date and time of Plaintiff's accident in this case. The Plaintiff reserves the right to supplement Plaintiff's exhibit list upon review of Defendant's exhibits and/or supplementary materials. The Plaintiff also reserves the right to supplement Plaintiff's objections in this regard.

XII.    Any proposed jury instructions, special verdict form or special interrogatories. If counsel cannot agree on any particular instruction, special verdict question or interrogatory, each party shall submit a proposed instruction, special verdict question or interrogatory in response to the opponent's proposal.

                                                      COFFEY KAYE MYERS & OLLEY

                                                      BY: /s/ Robert E. Myers, Esquire
                                                          ROBERT E. MYERS
                                                          Counsel for Plaintiff