UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICKEY A. JONES,<br>                    Plaintiff,<br>        v.<br><br>NEW ENGLAND CENTRAL RAILROAD,<br>INC.,<br>                    Defendant. | Civil Action No.: 04-11772-MAP |

## JOINT PRE-TRIAL MEMORANDUM

I.      **CONCISE STATEMENT OF THE EVIDENCE THAT WILL BE OFFERED ALL PARTIES WITH RESPECT TO BOTH LIABILITY AND DAMAGES (INCLUDING SPECIAL DAMAGES, IF ANY):**

A.      **Liability:**

1.      **Plaintiff:**

On April 15, 2002 Plaintiff, Rickey A. Jones, was employed by the Defendant as a utility engineer/conductor.  He was working at the "Italy" Yard in St. Albans, Vermont, in the area of Track 109, Switch 109, at approximately Mile Post 0.8.  He began his tour of duty at approximately 3:00 p.m. on that date.  As part of his work responsibilities, Plaintiff was required to work on and about various types of railroad equipment and was further required to walk on and around the aforementioned Italy Yard.

At approximately 5:00 p.m. the draft of cars on which Plaintiff was riding pulled onto Track No.109.  After the train stopped, it was necessary for Plaintiff to detrain from the back of the car.  Unlike the middle of the railroad car where there was a ladder present for the use of the rail workers, this particular car merely had a slippery pole at the end of the car.  The Plaintiff had

to use both hands to shimmy down this pole in order for the Plaintiff to move his feet lower to eventually place his left foot in what's called a "stirrup" or the bottom rung to detrain.  The "stirrup" is approximately 2-1/2 feet above the ground but underneath the car to the extent where it cannot be seen from the position when an individual has his hands on the pole climbing down, as was the Plaintiff in this case.  Ultimately the Plaintiff was able to extend his left foot underneath the car and place it onto the stirrup, but unfortunately, because of its unusual positioning, his left foot was forced to be pointed in an upward position.  While Plaintiff was attempting to climb off the car, his left foot slipped off the stirrup and Plaintiff's hands slipped down this pole and he was unable to prevent his fall onto the ground.  When Plaintiff fell, his right leg absorbed most of the impact from the fall as he struck the ground.  Plaintiff felt immediate pain and discomfort in his right leg.

Unfortunately the Defendant kept its rail yard in a horrendous condition.  For example, instead of using required graphite to grease the metal switches, the employees used old burnt motor oil on the switches instead.  Over a long period of time, the railroad had accumulated numerous and huge puddles of this oil and other types of grease throughout the yard on the walking surfaces.  The Defendant also utilized old engines to move other cars within the yard and because of their old and worn out condition they spit oil onto the ground as well.  The walking surface of the yard was composed of a rocky surface called "ballast" that was composed of different sized pieces of rock that roll, give way with water seepage and are very slippery when covered with oil, grease, water, rotten grain, lithium grease and other slippery substances.

There is also a mixture of a powdery substance on the cars which, when mixed with water, creates a slurry or slippery condition on various parts of the cars including the poles, stirrups, as well as the other parts of the cars.  The Defendant has a long history of not cleaning

2

or maintaining a safe yard and cars, unfortunately, Plaintiff accumulated these greasy substances on the bottom of his shoes that affected his ability to climb down the pole and place his left foot in the stirrup safely and the pole was also slippery, causing his hands to slip to the point where he was unable to use his hands to prevent his body from falling to the ground.

Defendant violated the Federal Employers' Liability Act in that it failed to inspect and/or to remove the dangerous conditions on the ground, it failed to inspect or remove the dangerous conditions on the pole, the stirrup and other parts of the car and other cars in question; it failed to discover the presence of grease, oil, slurry and/or other substances and/or remove the accumulated water or generally eliminate the unsafe ground conditions in the yard itself. The railroad failed to properly maintain the stirrups and grab irons in a safe condition in that they failed to eliminate these dangers on the rail car in question.

## 2.    **Defendant:**

The plaintiff claims that he was injured on August 15, 2002 as the result of falling from a "stirrup" on a railroad tank car from which he was dismounting while performing his duties as a railroad conductor in the NECR's St. Alban's, Vermont railroad yard. The evidence in this case will show that: (1) the NECR was not negligent with respect to the happening of the plaintiff's accident; (2) the NECR provided the plaintiff with a reasonably safe workplace as required by the Federal Employers' Liability Act ("FELA"); and (3) the accident was caused entirely by the plaintiff's own carelessness. More specifically, the NECR expects the evidence to show that there were no foreign substances (such as oil, grease and/or rotten feed) present, at the time of the plaintiff's accident, on either: (1) the tank car from which the plaintiff allegedly fell; (2) the area of the yard the plaintiff was working; or (3) the boots the plaintiff was wearing. The evidence will show that the plaintiff simply lost his balance and fell and that he is now making

3

up a story about these foreign substances. The NECR expects that the plaintiff will be completely lacking in all credibility in this regard.

Shortly after the accident (on the same night it occurred), the plaintiff prepared a *Personal Injury Report* in which he stated he simply slipped from the stirrup on the tank car. He did not mention any foreign substances on either his boots or the tank car itself. The plaintiff also stated in his *Personal Injury Report* that he did not know of any defects with the car at the time of the alleged incident.

In a recorded statement the plaintiff made one week after the accident, he again did not mention any substance, such as slurry, oil, grease or rotten feed/grain – instead, he stated that he simply fell. He also failed to mention, in *Answers to Interrogatories* he signed on November 24, 2004, that slurry, oil, grease or rotten feed had anything to do with his accident.

The car involved in the alleged incident was inspected by NECR car inspector Thomas Tozzer the next day while it was still located in the railroad yard. It was determined that all safety appliances, including the stirrup in question, were in good shape and there were no defects at the time of the accident. Mr. Tozzer also determined there were no foreign substances such as grease, oil or slurry on the stirrups.

Only in the context of this lawsuit, under the guiding hand of his counsel, has plaintiff mentioned that slurry, oil, grease and/or rotten grain/feed caused him to slip from the tank car. The NECR intends to present evidence that these conditions did not exist on or around the tank car allegedly involved in the plaintiff's incident. The plaintiff himself has admitted that there was no slurry present on the stirrup from which he fell. The NECR also expects the evidence to show that even if the plaintiff had tracked some substance on his boot while walking through the defendant's rail yard, it could not have caused his alleged slip from the tank car. The plaintiff

4

stated in his deposition that he stepped on the stirrup with the <u>arch</u> of his foot; however, in the same deposition, he admits that oil or grease was only present on the <u>toe</u> of his boot, which in no way could have caused his fall from the tank car.

The defendant also expects to show that, to the extent these conditions were present: (1) the plaintiff himself was solely responsible for their involvement in his incident; and (2) it did not have the notice of these conditions required to impose liability under the FELA. All of these conditions were, according to the plaintiff, present in such large commodities that they were open and obvious. He easily could have, and should have, avoided walking through large puddles of oil or grease or large piles of rotten grain. In fact, the plaintiff was required, by the rules which governed the performance of his job, to closely inspect walking conditions and to avoid any substance which could affect his safety. In addition, the plaintiff was required to inspect the tank car for any defects, such as the presence of slurry on the stirrup. If the slurry was indeed present, he failed to properly inspect, notice and remedy the condition. Moreover, the conditions were present on the plaintiff's boots, if at all, for a very short time – there is no evidence that the defendant had any notice of these conditions.

Finally, the plaintiff had the best and last clear chance to avoid this accident. He could have, and should have, removed whatever substance he had tracked onto his boots, thereby removing any slipping hazard, before he mounted the tank car. He could have, and should have, removed whatever slurry was on the stirrup. Perhaps most importantly, he could have, and should have, simply avoided walking through the piles and puddles of these substances which, according to his testimony, were present throughout the yard – there were a number of alternative methods of performing his job which would not have necessitated his walking through these substances.

**B.**     **Damages:**

    **1.**     **Plaintiff:**

        **a.**     **The Plaintiff's Physical Injuries**

Plaintiff reported his injuries to his supervisors. After a long delay caused by his supervisors, Plaintiff was eventually removed from the yard and transported to Northwestern Medical Center and received emergency care to his right leg and back. He was given medication and placed on crutches and referred to Raymond A. Long, M.D., an orthopedic surgeon.

Dr. Long ordered an MRI that revealed that the Plaintiff suffered a medial meniscal tear and bony bruising of the tibia plateau as well as an anterior cruciate ligament tear of the right knee. Plaintiff was referred to Robert Beattie, M.D., who is one of his treating orthopedic surgeons who will also testify as an expert in this case. Dr. Beattie diagnosed Plaintiff's injuries as right knee tear of the anterior cruciate ligament and medial meniscal tear in his right knee. Ultimately, Dr. Beattie performed a right knee laparoscopic anterior cruciate ligament reconstruction, a hamstring tendon and arthroscopy of the medial meniscal repair as well as a partial medial meniscectomy. After surgery Plaintiff was braced and referred to physical therapy.

Ultimately Plaintiff was released to try to attempt to work, which he did for approximately four months. Unfortunately, this was unsuccessful due to the great pain and discomfort in his right knee as well as the limitation of the movement of his knee and leg caused by the injuries Plaintiff sustained in this case. Dr. Beattie ultimately prescribed and conducted injection therapy to his right knee, which unfortunately failed as well.

Later, the Plaintiff moved to Clewiston, Florida and came under the care of Michael Mikolajczak, D.O., from The Center for Bone and Joint Surgery. Dr. Mikolajczak is a board

certified orthopedic surgeon. Plaintiff was ordered to undergo an additional MRI of the right knee. The MRI of the right knee revealed that he had a relatively intact anterior cruciate ligament graph with suspected donor site at the pole of the patella ligament as well as a partial meniscectomy involving the posterior horn of the medial meniscus. There was also a suspicion of a retear of the medial meniscus, and Dr. Mikolajczak recommended exploratory surgery.

On February 26, 2004 Dr. Mikolajczak performed an arthroscopy of the right knee, a chondroplasty of the medial femoral condoyle and patellar femoral joint per grades 2-4 osteocondral defects, as well as a partial medial meniscectomy of about 20 percent posterior horn partial synovectomy. Essentially there was a retear of the postural horn of the meniscus tear with approximately 20 percent involvement that was performed by Dr. Mikolajczak along with a tightening of the ACL reconstruction site.

Plaintiff underwent post surgerical rehabilitation, bracing and subsequent injections in his right knee as well. Dr. Mikolajczak last saw the Plaintiff on June 19, 2006 and noted the Plaintiff was still having problems with his right knee, crepitation with joint line tenderness and muscle atrophy and scant effusion. Both treating physicians, Dr. Beattie and Dr. Mikolajczak, not only had similar diagnoses of Plaintiff's injuries but they opined that the Plaintiff's injuries were caused or exacerbated by the accident in question and other than a four month trial return to work was disabled from his employment. They have both released the Plaintiff to perform light and sedentary work.

b.    **The Plaintiff's Economic Damages**

The Plaintiff looked for alternative employment and ultimately in April of 2005 was able to obtain a job as a parts salesman for Original Equipment Company in Clewiston, Florida, and is currently earning $8.50 per hour. The Plaintiff works between 40 and 45 hours per week. The

Plaintiff does not receive any medical, dental and/or other health benefits from this position. Cathy McVay, a Certified Disability Management Specialist, Senior Disability Analyst and Diplomate State of Florida Qualified Rehabilitation provider, interviewed the Plaintiff and performed various tests and reviewed his earnings data, along with other material, and ultimately opined that the Plaintiff was, in fact, disabled from his railroad employment and had sustained a loss of earning capacity as a result of the injuries and permanent physical restrictions caused by the accident in this case. She recommended vocational rehabilitation training and further opined that he would sustain an annual wage loss of approximately $14,300 in differential and potential earnings that he earned from the railroad and earned subsequently or could earn in the future.

Plaintiff engaged Andrew G. Verzilli, Ph.D., an Economist, to calculate the present value of the difference in potential earning capacity relative to Plaintiff in this case. Dr. Verzilli opined that Plaintiff was born November 17, 1974 and was injured on August 15, 2002 at age 27. Dr. Verzilli performed his forensic economic evaluation on January 12, 2006 when the Plaintiff was 31 years of age, noting that the Plaintiff had a statistical life expectancy of an additional 45.8 years. Dr. Verzilli noted that the Plaintiff has sustained estimates of the difference in potential earning capacity to age 62 from $860,000 to $1,200,000; to age 67 from $940,000 to $1,394,000; to age 70 from $983,000 to $1,500,000. Plaintiff also claims damages for past and future pain and suffering.

    2.   **Defendant:**

        a.    **The Plaintiff's Physical Injuries:**

The defendant states that the plaintiff was not injured as a result of the alleged incident. The defendant intends to elicit evidence that the plaintiff suffered from prior knee problems which are the true cause of any injuries and/or disability the plaintiff claims. The defendant also

expects the evidence to demonstrate that any injuries the plaintiff suffered as a result of his August 15, 2002 incident fully resolved within a few short months thereafter and that the plaintiff was subsequently injured on July 14, 2003 in a separate, non-related incident to which no liability attaches.  It was this second accident, alone or in conjunction with the plaintiff's preexisting conditions, which caused the problems about which he now complains.

The plaintiff claims in this lawsuit that on August 15, 2002 he injured his right knee as the result of a fall from a railroad tank car.  However, before and since August 15, 2002 the plaintiff suffered from other serious conditions and injuries to the very same part of his body.  Specifically, in 1998 he developed patellar femoral syndrome[1] in his right knee while in the U.S. Marines.  This condition led to the plaintiff's being medically disqualified and discharged from the Marines.  Notably, the plaintiff is now claiming to be disabled due to patella femoral syndrome and degenerative osteoarthritis of the right knee.  On June 9, 2002, nearly two months before the date of the incident which is the subject of this litigation, the plaintiff again injured his right knee while playing volleyball, an injury for which he sought medical care and treatment at Northwest Medical Center.  The plaintiff missed two weeks from work due to the injury to his right knee and used crutches and a knee brace during this period of time. The plaintiff was diagnosed with a right knee sprain.   At the hospital on June 10, 2002, the plaintiff was unable to straighten his right knee due to his injury playing volleyball the previous day.

Following the August 15, 2002 incident the plaintiff was diagnosed with a tear of the meniscus and anterior cruciate ligament ("ACL").        The plaintiff then underwent a reconstruction of his ACL and a meniscectomy at which time it was found that the plaintiff

---

[1] Patellar femoral syndrome is a condition which results in the separation of a muscle attached to the knee cap which causes the knee cap to articulate improperly with the femur causing pain and discomfort, and ultimately, degenerative changes.

suffered from arthritis in the area where his femur contacted the patella - the same area affected by the plaintiff's pre-existing patellar femoral syndrome.    The plaintiff fully recovered after physical therapy and returned to work on March 24, 2003. From March 24, 2003 until July 14, 2003, the plaintiff worked his full shifts and overtime and was able to fully perform the duties of his job.

On July 14, 2003, eleven months after the incident which is the subject of this lawsuit, the plaintiff injured himself once again.  He as simply walking in the St. Alban's railroad yard when his right knee pinched and buckled.    The plaintiff never reported this injury to NECR, because, according to his deposition testimony,  there was no defect nor negligence involved. The plaintiff's counsel has represented, on the record at the plaintiff's deposition, that the plaintiff is not seeking recovery for any injury that resulted from the July 14, 2003 incident.

The defendant's orthopedic expert, Dr. Michael Kennedy, will opine that the plaintiff's current knee problems were not caused by the August 15, 2002 accident.  Instead, the plaintiff has a degenerative condition, patellar femoral syndrome, that pre-existed the alleged incident, and any injuries the plaintiff claims due to the alleged incident was, at best, an exacerbation of his pre-existing condition.  Further, the plaintiff fully recovered from the August 15, 2002 incident, and only upon re-injuring same July 14, 2003, does he now claim permanent disability.

     **b.**    **The Plaintiff's Economic Damages:**

The defendant expects the evidence to demonstrate that the plaintiff is fully capable of finding gainful employment which would pay him more than he was making at the time of his accident, and that the plaintiff is a malingerer because he has refused to even attempt to find any job other than a position at an auto parts dealer which pays him only $8.00/hr. Even in this job, the plaintiff works 40-45 hours per week, performs many physical tasks, drives a company-

owned truck and frequently makes sales calls.  More importantly the plaintiff himself has admitted that he is physically capable of returning to railroad work as an engineer, a yard master or a dispatcher.  The latter two positions earn a higher rate of pay than the plaintiff was making at the time of his accident.  Given this evidence, and the testimony of its vocational expert, Dr. Robert Galt, the NECR expects to demonstrate that the plaintiff has suffered no lost earning capacity.

## II.  STATEMENT OF FACTS ESTABLISHED BY THE PLEADINGS OR BY STIPULATION OR ADMISSIONS OF COUNSEL:

A.    The Plaintiff submits the following facts that have been stipulated, established by the pleadings and/or admitted to:

1.    Plaintiff is Rickey A. Jones currently residing at 407 Desoto Avenue, Clewiston, Florida 33440.

2.    Plaintiff's date of birth ████████████

3.    Plaintiff's Social Securit ██████████.

4.    Plaintiff's date of hire with New England Central Railroad was April 2, 2001. as a utility engineer/conductor.

5.    Plaintiff claims that his date of accident was August 15, 2002.

        *Defendant disputes this claim.*

6.    Plaintiff was a member of the United Transportation Union on the day of the accident.

7.    Defendant's corporation is duly organized and existing under and by virtue of the laws of one or more states of the United States of America and does business in the District of Massachusetts.

8.    At the time and place hereinafter mentioned and for a long time prior thereto, the Defendant, as a common carrier, operated trains carrying passengers, freight, express packages, baggage and foreign and domestic mail in commerce between the different states of the United States and its territories.

9.    The Defendant took statements of Brad Ovitt, Nathaniel Y. Cobb, Michael L. Lawyer and Thomas Tozzer, all of which have not been produced to Plaintiff's counsel in this case.  (See Defendant's Response to Plaintiff's Interrogatory #1.)

10.    Plaintiff's incident was reported to William L. Magee on August 15, 2002.  (See Defendant's Response to Plaintiff's Interrogatory #2.)

11.    Nathaniel Cobb was working as the engineer on the PM switcher job with the Plaintiff on the date in question.

12.    Kevin Bushey was the conductor working with the Plaintiff on the date in question.  (See Defendant's Response to Plaintiff's Interrogatory #6.)

13.    Plaintiff returned to work from March 24, 2003 until July 14, 2003.

14.    The Plaintiff was paid at a rate of $15.15 per hour as of December 1, 2003.  (See Defendant's Response to Plaintiff's Interrogatory #8.)

15.    The Plaintiff resigned from the Defendant on November 8, 2001.

16.    The Plaintiff resumed employment with the Defendant on April 28, 2002.  (See Defendant's Response to Plaintiff's Interrogatory #9.)

17.    The Plaintiff's earnings were as follows:

| | |
|---|---|
| 2000 | $39,933 |
| 2001 | $43,530 |
| 2002 | $37,210 |
| 2003 | $35,059 |

(Plaintiff did not work full years during 2002 and 2003.)

18.    The Plaintiff attended Clewiston High School in Clewiston, Florida and graduated in May of 1994.

19.    In August 1996 he joined the United States Marine Corps and was discharged two years later on a medical discharge in 1998.

**B.**   The defendant submits that the following facts have been stipulated, established by the pleadings and/or admitted to:

- This action has been brought pursuant to the *Federal Employers' Liability Act*, 45 U.S.C. 51, *et. seq.*  The NECR is a railroad within the meaning of that statute.

- On August 15, 2002, the plaintiff was employed by NECR as a Conductor and was engaged in his duties as a Conductor and together the parties were involved in interstate commerce.

- The plaintiff's duties in that position included moving and switching cars in and around NECR's Italy yard in St. Albans, Vermont.

- The plaintiff claims he was injured August 15, 2005.

- The car involved in the events of August 15, 2002 was a tank car No. SHPX201016.

- The plaintiff, at the time and place alleged, was in the process of switching a string of three cars from one track no. 108 to track no. 109 in the Italy yard.

- The plaintiff was dismounting tank car No.: SHPX201016 on track 109 at the time of the alleged incident.

- The plaintiff returned to work on March 24, 2003.

- The plaintiff worked his full shifts as well as periodic overtime, from March 24, 2003 until July 14, 2003, during which time he performed the full duties of his jobs.

- The plaintiff's right knee buckled on July 14, 2003 while the plaintiff was walking through the St. Albans yard.

- The plaintiff does not claim that the NECR was liable for or negligent regarding the July 14, 2003 incident.

- The plaintiff's date of birth i ████████████████ and his social security number is ███████

- The plaintiff's date of hire with NECR was April 2, 2001.

- The plaintiff was a member of the United Transportation Union on the day of the accident.

- The plaintiff's incident was reported to William Magee on August 15, 2002.

- Nathaniel Cobb was working as an engineer on the PM switcher job with the plaintiff on August 15, 2002.

## III.   **CONTESTED ISSUES OF FACT**:

A.     Whether plaintiff has suffered, as the result of his August 15, 2002 incident, the injuries complained of;

B.     Whether the plaintiff's injuries were actually and proximately casued by the defendant's negligence;

C.     Whether these injuries were pre-existing;

D.     Whether these injuries were fully resolved and later exacerbated or whether an entirely separate and independent injury took place on July 14, 2003;

E.     The percentage of the plaintiff's current disability which is due the August 15, 2002 incident, the percentage which preexisted, and the percentage which is due to the July 15, 2003 incident;

F.     The extent and severity of plaintiff's injuries;

G.     Whether and to what extent the plaintiff is disabled;

H.     The extent of plaintiff's alleged economic damages, if any;

I.     Whether the plaintiff has failed to mitigate his damages;

J.     Whether the defendants provided a reasonably safe workplace for the plaintiff;

K.     The negligence, if any, of either party;

## IV.   **JURISDICTIONAL QUESTIONS**:

None.

14

## V.    QUESTIONS RAISED BY PENDING MOTIONS:

### A.    Plaintiff:

As far as Plaintiff is aware, there are no pending motions.  Plaintiff anticipates filing Motions in Limine regarding irrelevant and inadmissible material that was brought up during the Plaintiff's deposition.  Plaintiff will object to any testimony concerning Plaintiff's prior assault in the United States Marine Corps for which no criminal charges were pressed by the government. The Plaintiff will also anticipate filing a Motion in Limine with regard to all railroad retirement and all other collateral estoppel benefits received by the Plaintiff in this case.  Plaintiff will also anticipate filing a Motion in Limine with regard to any surveillance films, investigations and photographs and surveillance films that have not been produced as of this date.  Plaintiff will object to any and all irrelevant and/or prejudicial material incorporated by defendant's experts in their expert reports in this case.  The Plaintiff reserves the right to supplement and the right to file motions with regard to any other matters or materials otherwise subsequent to this time period.  The plaintiff has filed the following motions:

1.    *Motion in Limine to Preclude Collateral Source.*

2.    *Motion in Limine to Exclude Any Evidence of Prior Disciplinary Hearings.*

3.    *Motion in Limine to Preclude Witnesses Whose Tape-Recorded Statements Have Not Been Produced*

### B.    Defendant:

The Defendant expects to file the following motions in limine:

1.    *Motion In Limine to Admit Collateral Source Benefit Evidence on Issue of Credibility.*

2.    *Motion In Limine To Admit Apportionment Evidence.*

3.    *Motion In Limine to Exclude Any Evidence that Stirrup of Rail Car was Improperly Designed.*

4.    *Motion In Limine to Exclude Photographs Taken by Plaintiff.*

5.    *Motion In LimineTo Exclude Any Evidence About The Presence Of Slurry, Oil Or Grease.*

6.     *Motion In Limine To Preclude The Plaintiff From Presenting A Theory Of Liability Based On The Events Surrounding His Injuries Sustained On July 14, 2003 And For A Pre-Trial Instruction On This Issue.*

## VI.    ISSUES OF LAW INCLUDING EVIDENTIARY QUESTIONS TOGETHER WITH SUPPORTING AUTHORITY:

### (1)    Plaintiff's Statement of the Law:

#### a.    FELA Liability:

"The Federal Employers' Liability Act,"[2] a federal statute, provides the exclusive remedy by which an injured railroad employee can recover compensation in the nature of money damages

---

[2] 45 U.S.C. §§51 et seq.  Section 51 of Title 45 states:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Colombia and any of the States or Territories, or between the District of Colombia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury if death resulting in whole or in part from the negligence of any of the officers, agents, employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.

> Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter.

from his employer for all work related injuries.[3]

The F.E.L.A. was intended by Congress to be remedial and humanitarian legislation.  Urie v. Thompson, 337 U.S. 163, 181 (1949); Yawn v. Southern Ry. Co., 591 F.2d 312, 316 (5th Cir. 1979); Eggert v. Norfolk & Western R.R. Co., 538 F.2d 509, 511 (2d Cir. 1976); Pehowic v. Erie Lackawanna R.R. Co., 430 F.2d 697, 699 (3d Cir. 1970); Randall v. Reading Co., 344 F.Supp. 879, 882 (M.D.Pa. 1972).  It was enacted because the Congress was dissatisfied with the common-law duty of the master to his servant.  Rogers v. Missouri Pacific R.R. Co., 352 U.S. 500, 507 (1957). The United States Supreme Court has observed,

> "This statute, . . . was a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety.  The cost of

---

[3] The term injury is to be expansively interpreted.  As the United States Supreme Court said in Urie v. Thompson, 337 U.S. 163, 181-82 (1949) silicosis contracted because of improper functioning of locomotive sanders):

> We recognize, of course that, when the statute was enacted, Congress' attention was focused primarily upon injuries and death resulting from accidents on interstate railroads. Obviously these were the major causes of injury and death resulting from railroad operations.  But accidental injuries were not the only ones likely to occur.  And nothing in either the language or the legislative history discloses expressly any intent to exclude from the Act's coverage any injury resulting "in whole or in part from the negligence" of the carrier.  If such an intent can be found, it must be read into the Act by sheer inference.

> The language is as broad as could be framed:  "any person suffering injury while he is employed"; "such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier"; "by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances," etc.  On its face, every injury suffered by an employee while employed by reason of the carrier's negligence was made compensable.  The wording was not restrictive as to the employees covered; the cause of injury, except that it must constitute negligence attributable to the carrier; or the particular kind of injury resulting.

> See also, Yawn, supra (mental anguish).

17

> human injury, an inescapable expense of railroading,
> must be borne by someone * * * [I]t was the
> conception of this legislation that the railroad was a
> unitary enterprise, its economic resources obligated to
> bear the burden of all injuries befalling those engaged
> in the enterprise arising out of the fault of any other
> member engaged in the common endeavor."

Sinkler v. Missouri Pacific R.R. Co., 356 U.S. 326, 329-30 (1958).[4]  Because of these policy

considerations, the F.E.L.A. supplants the railroad employer's common law duty with a "far more

drastic duty."  Rogers, supra at 507.

Under the F.E.L.A. the railroad is obligated to provide its employees with a safe place to

work.  This duty is non-delegable.  Shenker v. Baltimore and Ohio R.R. Co., 374 U.S. 1, 7 (1963);

Ellis v. Union Pacific R. Co., 329 U.S. 649, 653, n.2 (1947).[5]  There is no requirement that the

railroad have notice of a dangerous or defective condition.  The railroad's duty is an affirmative one,

and it must make the proper tests and inspections to discover dangers in the places where employees

must work, Shenker, supra at 7-8; Cazad v. Chesapeake and Ohio Ry.Co., 622 F.2d 72, 75 (4th Cir.

1980); Carter v. Union Railroad Company, 438 F.2d 208, 211 (3d Cir. 1971); Isgett v. Seaboard

Coast Line R.R. Co., 332 F.Supp. 1127, 1140 (D.S.C. 1971), warn its employees of the dangers,

---

[4]Another clear statement of the F.E.L.A's remedial purpose is found in Mr. Justice Douglas' concurring opinion in Wilkerson v. McCarthy, 336, U.S. 53, 68 (1949):

> "The purpose of the Act was to . . . lift from employees the
> 'prodigious burden' of personal injuries which that system (pre-
> FELA) had placed upon them, and to relieve men 'who by the
> exigencies and necessities of life are bound to labor' from the
> risks and hazards that could be avoided or lessened' by the
> exercise of proper care on the part of the employer in providing
> safe and proper machinery and equipment with which the
> employee does his work.'"

[5]See also, Ragsdell v. Southern Pacific Transportation Co., 688 F.2d 1281, 1283 (9th Cir. 1982); Kendrick v. Illinois Central Gulf R. Co., 669 F.2d 341, 342 (5th Cir. 1982); Cazad, supra at 75; Yawn, supra at 315; Schiller, supra at 269; Duncan v. St. Louis - San Francisco Ry. Co., 480 F.2d 79, 83 (8th Cir. 1973); Carter, supra at 210; Isgett, supra at 1139; Pehowic, supra at 699; Carney v. Pittsburgh & Lake Erie R.R., 316 F.2d 277 (3d Cir. 1963); Williams v. Atlantic Coast Line R. Co., 190 F.2d 744, 747 (5th Cir. 1951); Raudenbush v. Baltimore and Ohio R. Co., 160 F.2d 363, 367 (3d Cir. 1947).

Bassett v. New York, Chicago and St. Louis R.R. Co., 235 F.2d 900, 901 (3d Cir. 1958), and then

protect its employees from those possible dangers.  This duty exists even when the employees will

only be at the work place for a brief period of time, or when its employees' work place is on

property owned, maintained and controlled by a third-party.  Shenker, supra at 8, 10; Ellis, supra at

n.2; Cazad, supra at 75; Schiller v. Penn Central Transportation Co., 509 F.2d 263, 269 (6th Cir.

1975); Carter, supra at 210-11.

Under the F.E.L.A. the employer is liable if its negligent failure to provide its employees

with a safe place to work,[6]

"played any part, even the slightest, in producing the

---

[6]This failure to provide a safe place to work is measured by standards of due care commensurate to the dangers of the business.  Wilkerson, supra at 61; Missouri-Kansas-Texas Ry. Co. v. Hearson, 422 F.2d 1037, 1040 (10th Cir. 1970). The railroad can be liable for, inter alia, negligent inspection, negligent warning, failure to provide sufficient help to perform assigned work, failure to provide necessary and safe tools, and the negligence of its other employees.  See, e.g. Sinker, supra at 329-31; Shenker, supra at 8; Ellis, supra at 652-653, n.2; Blair v. Baltimore & Ohio R. Co., 323 U.S. 600 (1945); Yawn, supra at 315; Bassett, supra at 901.  Examples of situations where the railroad has been negligent under the F.E.L.A. are listed in Appendix "A".  It is significant to note that in many of these examples the railroad's negligent failure to provide a safe place to work was minimal, or acted in conjunction with other forces.  Nonetheless, the railroad is held to the standard of liability.

It should be mentioned at this point that a finding of negligence is not always necessary under the F.E.L.A. Two amendments, "The Federal Safety Appliances Act" (which is concerned with inter alia, safe and properly operating brake systems. couplers, grab irons or hand holds and drawbars) and "The Federal Boiler Inspection Act" (which is concerned with safe locomotives), only require proof of a statutory violation and causation, in whole or in part.  See, 45 U.S.C. §§1-22, 23, inclusive; Coray v. Southern Pacific Co., 335 U.S. 520, 524 (1949).  No notice to the defendant, actual or constructive, of the defects or of an unsafe condition is necessary to establish liability.  Baltimore and Ohio R.R. Co. v. Graeger, 266 U.S. 521, 527 (1925).  These Acts are to be "liberally construed in light of (their) prime purpose, the protection of employees and others by requiring the use of safe equipment."  Lilly v. Grand Trunk Western R. Co., 317 U.S. 481, 486 (1943).  As the United States Supreme Court stated,

"The statutory liability is not based upon the carrier's negligence.  The duty imposed is an absolute one, and the carrier is not excused by any showing of care, no matter how assiduous."

Myers v. Reading Co., 331 U.S. 477, 482 (1947) (emphasis added).  See also, Lilly, supra; O'Donnell v. Elgin, J. & E. Ry. Co., 338 U.S. 384, 390 (1950); Coleman v. Burlington Northern, Inc., 681 F.2d 542, 544 (8th Cir. 1982); Metcalfe v. Atchison, Topeka and Santa Fe Ry. Co., 491 F. 2d 892, 895 (10th Cir. 1974); Phillips v. Chesapeake and Ohio Ry. Co., 475 F.2d 22, 25 (4th Cir. 1973); Ledford v. Pittsburgh and Lake Erie R.R. Co., 345 A.2d 218, 222 (Pa.Super. 1975).  Neither assumption of the risk nor contributory negligence are defenses to violations of these amendments, nor does contributory negligence diminish recovery.  Lilly v. Grand Trunk, supra at 491; Coray, supra at 524.

injury or death for which damages are sought."

Rogers, supra at 506.[7]  This standard has been characterized as one of slight negligence, minimal negligence, and even infinitesimal negligence.[8]

> **b.**    **Causation Under the F.E.L.A.**:

The railroad is liable for the negligent actions or inactions of its employees.  This means that the railroad is liable to the plaintiff if his injuries were caused by the negligence of a co-worker.  45 U.S.C. §51.

In order to constitute a violation of the F.E.L.A., the railroad's conduct need not be the sole cause of the employee's injury.  The railroad is liable if its negligence played any part in causing an injury, and "it does not matter that . . . the jury may also . . . attribute the result to other causes, including the employee's contributory negligence."  Rogers, supra at 506 (emphasis added); Sleeman, supra at 306.[9]

The standard applied in determining whether there is sufficient evidence to send an F.E.L.A. case to the jury is significantly broader than the standard applied in common law negligence actions. The Supreme Court, keeping in mind the purposes of the Act and the liberal construction given it, teaches:

> "a trial court is justified in withdrawing . . . issues
> from the jury's consideration only in those extremely

---

[7] See also, e.g. Ellis, supra at n.2; Ybarra v. Burlington Northern, Inc., 689 F.2d 147, 149 (8th Cir. 1982); Kendrick v. Illinois Central Gulf R.R. Co., 669 F.2d 341, 343 (5th Cir. 1982); Cazad, supra at 75; Weese v. Chesapeake and Ohio Ry. Co., 570 F.2d 611, 613 (6th Cir. 1978); Eggert, supra at 511; Randall, supra at 883; Rodriquez v. Delray Connecting R.R., 473 F.2d 819, 820 (6th Cir. 1973); Fuhrman v. Reading Co., 439 F.2d 10, 12 (3d Cir. 1971); Isgett, supra at 1127; Pehowic, supra at 699; Hearson, supra at 1040; Ross, supra at 329; Sleeman v. Chesapeake and Ohio Ry. Co., 414 F.2d 305, 306-07 (6th Cir. 1969).

[8] See, Ledford, supra at 222.

[9] The Courts have even held that, where injury is caused by the criminal acts of a third-party, the railroad can be held liable if its negligence played any part, even the slightest, in the assault occurring.  See e.g., Lillie v. Thompson, 332 U.S. 459, 462 (1947).

> rare cases where there is <u>zero</u> <u>probability</u> either of
> employer negligence or that any such negligence
> contributed to the injury of an employee."

<u>Pehowic</u>, supra at 700 (emphasis added); <u>Metcalfe</u>, supra at 895; <u>Lane</u>, supra at 335.  This

policy of liberally sending cases to the jury is essential because, otherwise, railroad workers will be

deprived of "goodly portion of relief which Congress has afforded them."  <u>Phillips</u>, supra at 25,

citing <u>Bailey v. Central Vermont Ry.</u>, 319 U.S. 350 (1943).  The United States Supreme Court has

warned,

> "This Court is vigilant to exercise its power of review
> in any case where it appears that the litigants have
> been improperly deprived of that [jury]
> determination." <u>Rogers</u>, supra at 509.

The Supreme Court has specifically sanctioned sending the case to the jury even when the

proof is "entirely circumstantial."[10]  <u>Rogers</u>, supra at 508; <u>Fuhrman</u>, supra at 12; <u>Pehowic</u>, supra at

700; <u>Zappia v. Baltimore & Ohio R.R. Co.</u>, 312 F.2d 62, 64 (6th Cir. 1963), citing, <u>Schultz v.</u>

<u>Pennsylvania R.R. Co.</u>, 350 U.S. 523, 526.  The Court has said that the case cannot be kept from the

jury and a jury verdict cannot be overturned simply because a jury verdict "involved speculation and

conjecture."  <u>Lavender</u>, supra at 653.

---

[10] <u>See</u>, <u>e.g.</u>, <u>Stanzak v. Pennsylvania R. Co.</u>, 174 F.2d 43 (7th Cir. 1949), (Stanzak was engaged in a local industry switching operation.  He was seen by the conductor standing on the lowest step of a caboose, and then moments later, he disappeared.  The evidence showed potentially defective conditions of the caboose step and the loading platform which was 4 to 6 inches from the train.  No one witnessed the accident, and there was no evidence as to what caused him to fall.  The railroad argued that the accident was solely due to Stanzak's own negligence.  The Court held that there was sufficient circumstantial evidence to enable the jury to conclude that one or both of the alleged defects contributed to his death.); <u>Lavender v. Kurn</u>, 327 U.S. 645 (1946), (Decedent had crossed from the north to south side of a track prior to his death.  Although it was determined that this death was caused by an object striking his head, there were no witnesses.  Plaintiff claimed that decedent was struck by a loosely hanging mail hook on the outside of a backing-up train.  The railroad argued that he was murdered by one of the many hoboes and tramps who frequented the area.  The evidence indicated he had not been robbed.  The Court noted that facts existed to support either explanation of decedent's death, and that even though circumstantial, the jury's verdict which accepted the inference of railroad negligence, was permissible.)

  **c.**  **Assumption of the Risk is Never a Defense**:

  Under the F.E.L.A. assumption of the risk is never a defense. 45 U.S.C. §54; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 58 (1943); Dixon v. Penn Central Co., 481 F.2d 833 (6th Cir. 1973). Although contributory negligence is not a defense which bars recovery, a finding of contributory negligence does diminish damages in proportion to the amount of negligence attributed by the jury to the employee. 45 U.S.C. §53; Patterson v. Norfolk and Western Ry. Co., 489 F.2d 303, 306 (6th Cir. 1973); Wilkerson, supra at 61. The doctrine of contributory negligence can never be used as a camouflage for assumption of risk, and therefore, "an employee cannot be charged with contributory negligence simply because he assumed the risk." Dixon, supra at 835.

  **d.**  **Collateral Source:**

  Evidence of disability payments, which the Plaintiff is receiving under The Railroad Retirement Act and/or Workmen's Compensation Benefits, is inadmissible. The Court should not allow evidence of, or comment about, Mr. Jones' collateral source of income in the nature of disability pension payments under The Railroad Retirement Act and/or Workmen's Compensation Benefits.

  Under the Collateral Source Rule, the Plaintiff need not offset his recovery from the Defendant by the amount of any benefits received from sources collateral to the Defendant. Eichel v. New York Central Railroad Co., 375 U.S. 253, 84 S.Ct. 316 (1963).

  There should be no questions, no inference about, and no reference to Mr. Jones' receipt of Railroad Retirement disability benefits. The Supreme Court in Eichel held that evidence of disability payments, which plaintiff was receiving under The Railroad Retirement Act, was **inadmissible** as bearing on the extent and duration of disability suffered by plaintiff or on the issue of malingering. The Court reasoned that the likelihood of misuse by the jury outweighed

the value of such evidence. The Court further held that evidence thereof would violate the spirit of The Federal Employers' Liability Act and The Railroad Retirement Act.

In reaching its decision, the *Eichel* court was ahead of its time. It based its decision on a balance between the probative value of the evidence and a possibility of prejudice resulting from the jury's consideration of the evidence on irrelevant issues. This is the balancing now mandated by the Federal Rules of Evidence. However, this Court need not perform this balancing as the Supreme Court has already done so.

2.      **Defendant's Statement of the Law:**

a.      **FELA Liability:**

The defendant expects to prove that it provided the plaintiff with a "reasonably safe workplace" and thus did not violate the provisions of the *Federal Employers' Liability Act*, 45 U.S.C. 51, et seq. ("FELA"). Moreover, the defendant states that any such accident was due solely to the plaintiff's own negligence. Consequently, the defendant maintains that the plaintiff will be unable to meet his burden in proving each and every element of his FELA case.

In order to recover under FELA, the plaintiff must prove that the railroad was negligent. Tennant v. Peoria and Pekin Union Ry. Co., 321 U.S. 29 (1944). A plaintiff's prima facie case under the FELA must include all the same elements as are found in a common law negligence action including the element of foreseeability. Davis v. Burlington Northern, Inc., 541 F.2d 182 (8th Cir. 1976) cert. denied, 429 U.S. 1002 (1976); Robert v. Consolidated Rail Corp., 832 F.2d 3 (1st Cir. 1987). The plaintiff must prove each of these elements by a fair preponderance of the evidence. Id. at 6. A FELA defendant is not required to provide a perfect or absolutely safe workplace; rather its duty is to provide only a reasonably safe place to work. Id. "Although the

23

burden on a FELA plaintiff is not onerous, neither is it nonexistent, the plaintiff must present probative facts from which the negligence and the causal relation could reasonably be inferred." Dessi v. Pennsylvania R.R., 251 F.2d 149, 151 (3rd Cir. 1958), cert. denied, 356 U.S. 967 (1958).

<b>b.    Causation Under the FELA:</b>

A plaintiff must not only prove the employer's negligence, but that the negligence was the actual and proximate cause of plaintiff's injuries. *See* Chesapeake & Ohio Ry. v. Carnahan, 241 U.S. 241, 244 (1916). Although FELA is construed broadly, it does not impose strict liability on employers. *See* Robert, 832 F.2d at 6. As stated by the Court in Conroy v. Consolidated Rail Corp., 720 F.2d 221, 223 (1st Cir. 1983), "it is black letter law that a FELA plaintiff is not entitled to absolute security; the act, unlike Workmen's Compensation Statutes, does not make an employer an insurer…It does not require absolute elimination of all dangers, but only contemplates the elimination of those dangers which could be removed by reasonable care on the part of the employer."

In this regard, statements that the plaintiff's burden of proof under the FELA is "slight" have occasionally been misconstrued. Specifically, the holding in Rogers v. Missouri Pacific R.R. Co., 352, U.S. 500, 506 (1957) does not support the view that FELA liability may be characterized "as one of slight negligence, minimal negligence, and even infinitesimal negligence." Such view has been soundly criticized in FELA decisions in recent years. An especially thoughtful analysis of this particular issue is provided in Gautreaux v. Scurlock Marine, Inc., 107 F.3d 332, 335-339 (5th Cir. 1997) (reference to work "slightest" in Rogers decision modifies only the causation prong of statutory liability and does not modify the concept of "negligence"; thus, duty of care owed by FELA and Jones Act employers retains usual and

24

familiar definition of ordinary prudence, and does not impose a higher standard of care on defendants).  Chapman v. Union Pac. R.R., 467 N.W. 2d 388, 395 (Neb. 1991) ("To recover under the *Federal Employers' Liability Act*, an employee must prove…that the alleged negligence is a proximate cause of the employee's injury").    In Consolidated Rail Corp. v. Gottshall, 512 U.S. 532 (1994), after issuing a reminder that FELA "does not make the employer the insurer of the safety of his employees while they are on duty,"[11] the U.S. Supreme Court explained that FELA "is founded on common-law concepts of negligence and injury."  Id. at 543.  Three years later, in Metro-North Commuter R.R. v. Buckley, 521 U.S. 424, 429 (1997) the Court reiterated this view of FELA.[12]

> **i.**  **The United States Supreme Court Has Established That A Railroad May Only Be Liable Under The FELA If Its Conduct Was The Proximate Cause In Whole Or In Part Of The Employee's Injury.**

Section 1 of the *Federal Employers' Liability Act* ("FELA") makes "[e]very common carrier by railroad ... liable in damages" for the injury or death of any employee employed in interstate commerce that "result[s] in whole or in part from the [railroad's] negligence."  45 U.S.C. § 51.  Absent an express statutory departure, the requisite elements of a FELA cause of action are determined by the common law "'as established and applied in the federal courts.'"  Urie v. Thompson, 337 U.S. 163, 174 (1949).

The long-established standard of causation under FELA, set forth in numerous precedents of the United States Supreme Court, is proximate cause:  the plaintiff must prove that the railroad's "negligence was the proximate cause in whole or in part" of the employee's injury.

---

[11] Quoting Inman v. Baltimore & Ohio R.R., 361 U.S. 138, 140 (1959) and Ellis v. Union Pac. R.R., 329 U.S. 649, 653 (1947).

[12] Gottshall and Buckley both established limiting rules for recovery for negligent infliction of emotional distress as being consistent with common law principles at the time of FELA's enactment.

Tennant v. Peoria & Pekin Union Ry., 321 U.S. 29, 32 (1944). Because the statute provides that a railroad may be liable if the employee's injury or death "resulted … in part from the [railroad's] negligence," 45 U.S.C. § 51, the jury may find the railroad liable even if there were other causes of the employee's injury or death. However, the Supreme Court has emphasized that the requirement of proximate causation must still be met: the railroad's conduct must be either "the sole or a contributory proximate cause." Coray v. Southern Pac. Co., 335 U.S. 520, 523 (1949). Accordingly,

> "to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act."

Brady v. Southern Ry., 320 U.S. 476, 483 (1943). The Supreme Court has reiterated the federal proximate cause rule under FELA in case after case.[13]

The Supreme Court further elaborated the federal proximate-cause rule in Davis v. Wolfe, 263 U.S. 239 (1923). In that case, which involved a FELA claim based on the railroad's violation of the Safety Appliance Act,[14] the Court held that "an employee cannot recover" if the railroad's unlawful conduct "is not a proximate cause of the accident which results in his injury, *but merely creates an incidental condition or situation in which the accident, otherwise caused,*

---

[13] *See*, *e.g.*, Lang v. New York Cent. R.R., 255 U.S. 455, 461 (1921) (reversing for lack of evidence of proximate cause); St. Louis-S.F. Ry. v. Mills, 271 U.S. 344, 347 (1926) (same); Northwestern Pac. R.R. v. Bobo, 290 U.S. 499, 503 (1934) (same); *see also*, *e.g.*, St. Louis, Iron Mountain & S. Ry. v. McWhirter, 229 U.S. 265, 280 (1913); Davis v. Kennedy, 266 U.S. 147, 148 (1924); Minneapolis, St. Paul & Sault Ste. Marie Ry. v. Goneau, 269 U.S. 406, 409-10 (1926); New York Cent. R.R. v. Ambrose, 280 U.S. 486, 489 (1930); Swinson v. Chicago, St. Paul, Minneapolis & Omaha Ry., 294 U.S. 529, 531 (1935); Brady v. Terminal R.R. Ass'n, 303 U.S. 10, 15 (1938); Tiller v. Atlantic Coast Line R.R., 318 U.S. 54, 67 (1943); Coray, 335 U.S. at 523 (1949); Urie, 337 U.S. at 195; O'Donnell v. Elgin, Joliet & E. Ry., 338 U.S. 384, 390 (1949); Carter v. Atlantic & St. Andrews Bay Ry., 338 U.S. 430, 434-35 (1949); Brown v. Western Ry. of Ala., 338 U.S. 294, 297-98 (1949).

[14] Violations of the *Boiler Inspection Act* and the *Safety Appliance Act* are actionable under FELA even in the absence of negligence, but the same "test of causal relation" applies in those cases as in negligence cases. Carter, 338 U.S. at 434; Louisville & Nashville R.R. v. Layton, 243 U.S. 617, 621 (1917) ("carriers are liable to employees in damages whenever the failure to obey these safety appliance laws is the proximate cause of injury to them when engaged in the discharge of duty").

*results in such injury*." Id. at 243 (emphasis added). On the other hand, the employee may recover if such conduct was "a proximate cause of the accident, resulting in injury to him while in the discharge of his duty." Id.

Notwithstanding this overwhelming precedent, some lower courts have held that the Supreme Court *sub silentio* overruled decades of its prior causation precedents in Rogers v. Missouri Pacific Railroad, 352 U.S. 500 (1957). *See*, *e.g.*, Oglesby v. Southern Pac. Transp. Co., 6 F.3d 603, 607 (9th Cir. 1993) ("'proximate cause' is not required under the FELA"); Summers v. Missouri Pac. R.R. Sys., 132 F.3d 599, 606 (10th Cir. 1997) (holding that Rogers "definitively abandoned" proximate causation). These decisions cannot be followed for two reasons. First, they are based on a patent misreading of Rogers. Second, and most fundamentally, the Supreme Court has held that it has the exclusive prerogative to declare its precedents overruled, and lower courts must continue to follow those prior precedents, even if they believe them to be inconsistent with later Supreme Court decisions. Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 484 (1989).

### ii. **The Supreme Court in Rogers v. Missouri Pacific Railroad Did Not Overrule Its Prior Precedents Establishing Proximate Cause As The FELA Standard:**

Rogers did not overrule, implicitly or explicitly, any of the numerous Supreme Court precedents establishing the federal rule of proximate cause under FELA. Rather, Rogers rejected a particular common-law conception of "proximate cause" that required a showing that the railroad's wrongful act was the "sole, efficient, producing cause of injury." 352 U.S. at 506. That conception was contrary to both the plain language of FELA and prior Supreme Court Court's precedents on proximate cause. Rogers made clear that in circumstances where the jury could find either the employee's or the railroad's negligence to be the proximate cause of the

injury, "the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Id.

In Rogers, the employee had been burning weeds on a sloping track bed. When a train passed, it fanned the flames of the fire he had created, and forced the employee back onto a culvert. The employee slipped on gravel and fell off the culvert, injuring himself. At trial, the employee adduced evidence that the railroad was negligent in requiring him to work near the tracks where passing trains could fan the flames around him, and in failing to maintain the surface of the culvert; the railroad countered with evidence that the plaintiff was negligent in not watching his fire. Id. at 502-04. The Court expressly stated that, on the evidence presented, the jury could have found either the employee or the railroad to have been the legal cause of the injury. Id. at 504.

Even though the jury had found for the plaintiff, the Missouri Supreme Court had reversed the judgment, in part on the ground that the employee's "conduct was at least as probable a cause for his mishap as any negligence of the [railroad], and that in such case there was no case for the jury." Id. at 505. The state court had erroneously ruled that "there is no jury question in actions under this statute … unless the judge can say that the jury may exclude the idea that his injury was due to causes with which the defendant was not connected." Id. at 505-06. The United States Supreme Court in Rogers disapproved the state court's decision, which improperly invoked "language of proximate causation which makes a jury question dependent upon whether the jury may find that *the defendant's negligence was the sole, efficient, producing cause of injury*." Id. at 506 (emphasis added). A rule that the railroad's negligence must be "the sole, efficient, producing cause of injury" is contrary to the statutory directive that renders a

28

railroad liable if it is a partial cause of the employee's injury. 45 U.S.C. § 51. Rather, where the evidence suggested multiple possible causes, the Supreme Court held that "[u]nder this statute the *test of a jury case* is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." 352 U.S. at 506 & n.11 (emphasis added). If that test is met, "a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities." Id. at 507.

Rogers cannot be read to overrule the *federal* proximate cause standard that the Court had established in its prior FELA cases. *See* Gallick v. Baltimore & Ohio R.R., 372 U.S. 108, 120 n.8 (1963) (invoking Rogers to uphold a jury verdict of proximate causation, and applying the "substantial factor" test of the *Restatement (Second) of Torts* § 435 (1965)). Indeed, Rogers was not creating new law at all; it simply restated settled law under FELA for cases involving multiple causation. See, *e.g.*, Hines v. Sweeney, 201 P. 165, 170 (Wyo. 1921) ("Under this act the railroad company is liable, if its negligence contributes proximately to the injury, no matter how slightly, and no matter how great may be the negligence of the employee."); New York, Chi. & St. Louis R.R. v. Niebel, 214 F. 952, 955 (6th Cir. 1914) (a railroad "is liable, if through other employees it is guilty of any causative negligence no matter how slight in comparison to that of plaintiff"); Atlantic Coast Line R.R. v. McIntosh, 198 So. 92, 96 (Fla. 1940) (Brown, J., dissenting in part and expressing the opinion of the court with regard to this issue). *See* Marazzato v. Burlington N. R.R., 817 P.2d 672, 674 (Mont. 1991) ("the Rogers case was addressing the issues of multiple causes and contributory negligence after it had been established that the employer was negligent").

Not only did <u>Rogers</u> never question the Supreme Court's prior precedents, but it explicitly derived its test of a jury case from prior FELA decisions that confirmed the longstanding federal proximate cause rule. For example, <u>Coray</u>, *cited in* <u>Rogers</u>, 352 U.S. at 506 n.11, held (as noted above) that the railroad's negligence must be either "the sole or a contributory proximate cause" of the employee's injury. 335 U.S. at 523. Similarly, <u>Carter v. Atlanta & St. Andrews Bay Railway</u>, *cited in* <u>Rogers,</u> 352 U.S. at 507 n.13 held that the railroad can only be held liable if "the jury determines that the defendant's breach is 'a contributory proximate cause' of injury." 338 U.S. 430, 435 (1949). In short, <u>Rogers</u> did not abrogate proximate cause as the standard the jury was to apply; rather, it simply established the "test of a jury case" when there was evidence of multiple possible causes of injury.[15]

### iii. <u>This Court Must Follow Supreme Court Precedents On Point Regardless Of Any Perceived Inconsistency With Later Precedent</u>:

Even if this Court were to interpret <u>Rogers</u> differently, it must still apply the federal proximate cause rule established in prior Supreme Court precedents. The Supreme Court has declared emphatically that the lower courts may not deviate from its precedents on point, regardless of the perceived effect of later decisions: "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." <u>Rodriguez de Quijas</u>, 490 U.S. at 484; <u>State Oil</u>

---

[15] The Supreme Court has stated in <u>Consolidated Rail Corp. v. Gottshall</u>, 512 U.S. 532 (1994) that FELA employs a "relaxed standard" of causation, *id.* at 543, and in <u>Crane v. Cedar Rapids & Iowa City Railway</u>, 395 U.S. 164 (1969), that a FELA plaintiff "is not required to prove common-law proximate causation," <u>Id</u>. at 166. Those statements are true; <u>Rogers</u> rejected the older common law conception of "proximate causation which makes a jury question dependent upon whether the jury may find that the defendant's negligence was the sole, efficient, producing cause of injury." <u>Rogers</u>, 352 U.S. at 506. <u>Rogers</u> did not, however, overrule or cast doubt on the longstanding proximate cause rule established in the Court's FELA precedents.

30

Co. v. Khan, 522 U.S. 3, 20 (1997) ("it is this Court's prerogative alone to overrule one of its precedents").

    c.    **Notice of Alleged Defect**:

In cases such as the plaintiff's, where an employee was allegedly injured as a result of an unsafe condition, including the presence of foreign substances or defective equipment, the employee must "show that the defendant had notice of the defect, either actual or constructive." Beeber v. Norfolk Southern Corp., 754 F. Supp. 1304, 1309 (N.D. Ind., 1990); see also Kaminski 200 F.2d at 4 ("Before defendant can be charged with negligence in failing to remedy the condition which caused plaintiff's injury, or failed to warn plaintiff of the existence of such a condition, it is necessary to establish that the defendant had actual knowledge of the condition, or, in the exercise of ordinary care, should have known of its existence."). The employee must show that: (1) an officer, employee or agent of the railroad was responsible, through negligence, for the presence of the unsafe condition; or (2) at least one of such persons had actual knowledge of its presence before the accident; or (3) the unsafe condition had continued for a sufficient length of time to justify the inference that failure to know about it and remove it was due to want of proper care. Brown v. Cedar Rapids and Iowa City Ry. Co., 650 F.2d 159, 161 (8th Cir. 1981). The burden of proving such knowledge rests on the plaintiff: "[t]he presumption prevails, even after proof of the defect, that the railway company was not aware of its existence; and until it is shown that the railway company knew, or in the exercise of ordinary care should have known, of the defect, it is not charged with that knowledge. Beeber, 754 F.Supp. at 1389, *quoting* St. Louis R. Co. v. Ingram, 124 Ark. 298, 187 S.W. 452, 453 (1916), *aff'd,* 244 U.S. 647, 37 S.Ct. 741 (1917).

### d.     Payment of Medical Expenses:

The plaintiff is not entitled to recover damages for medical expenses covered by the plaintiff's insurance policy, the premiums for which were paid by the railroad. Rogers v. Chicago & Northwestern Transportation Co., 375 N.E.2d 952 (1978); Nelson v. Pennsylvania Central Railroad Co., 415 F.Supp. 225 (1976). The plaintiff may not recover for medical expenses paid pursuant to the plaintiff's insurance policy covered by the railroad, but may introduce evidence concerning the amount of medical bills or expenses; defendant railroad may thereafter introduce evidence regarding the expenses that have been paid. Brice v. National Railroad Passenger Corporation, 664 F.Supp. 20 (1987). Some courts have held that a plaintiff cannot recover medical expenses paid by the railroad's health insurance and, therefore, the amounts of medical bills and expenses bare little, if any, relevance to the plaintiff's claim and were properly excluded from evidence. Varhol v. National Railroad Passenger Corp., 909 F.2d 1557 (7th Cir. 1990). 45 U.S.C. §55 provides that a railroad may set off in a FELA suit "any sum it has contributed and paid to any insurance, relief benefit or indemnity that may have been paid to the injured employee on account of the injury or death for which said action was brought."

### e.     Payment of Wage Continuation Benefits:

A railroad defendant is entitled to an offset for sums paid for medical treatment and for salary continuation under a long term disability plan. Anglim v. Missouri Pacific R.R. Co., 832 S.W.2d 298 (Mo. Banc 1992).

### f.     Prejudgment Interest:

Prejudgment interest is not permitted in a FELA action for injuries. Morgan v. Monessen Southwestern Ry. Co., 108 S. Ct. 1837 (1988).

### g.     Proper Measure of Damages:

Net wage loss is the proper measure of damages.  Jones & Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523 (1983); Norfolk & Western Ry. Co. v. Liepelt, 444 U.S. 490 (1980); Cazad v. Chesapeake & Ohio Ry. Co., 404 N.E.2d 320 (Ill. App. 1980).   Only after tax, or "net" income, is the proper measure of damages.  Norfolk & Western Ry. Co. v. Liepelt, *supra*.  Not only must federal income tax be deducted from any future wage loss calculation, but social security tax or railroad retirement tax must also be deducted, along with any state income tax. Pickel v. International Oilfield Divers, Inc., 791 F.2d 1237 (5th Cir. 1986); Matador v. Ingram Tank Ships, Inc., 732 F.2d 475 (5th Cir. 1985).  Plaintiff is required to deduct from his gross earnings not only taxes, but also the business costs and expenses he will not incur as a result of his alleged injuries.  These costs and expenses include union dues, transportation expenses, and special work clothing or safety equipment.  Jones & Laughlin Steel Corp. v. Pfeifer, 732 F.2d 475 (5th Cir. 1985).

### h.     Future Pain and Suffering:

The FELA requires a reduction of future pain and suffering to present value.  St. Louis S.W. Ry. Co. v. Dickerson, 470 U.S. 409 (1985).

### i.     Apportionment Damages:

It is a longstanding tenant of FELA jurisprudence that a railroad defendant is entitled, as a matter of law, to present evidence on a plaintiff's pre-existing medical conditions and accidents, and also to have the jury be instructed that it is to apportion the damages by allocating a percentage to the plaintiff's pre-existing conditions and prior accidents, and to have the plaintiff's damages reduced by the amount of this allocation.  *See, e.g.* Stevens v. Bangor and

<u>Aroostook Railroad Company</u>, 97 F.3d 594, 601-602 (1st Cir. 1996); <u>Harris v. Illinois Central</u>

<u>Railroad Co.</u>, 58 F.3d 1140, 1144-1145 (6th Cir. 1995); <u>Sauer v. Burlington Northern Company</u>,

106 F.3d 1490, 1495 (10th Cir. 1996); <u>Varhol v. National Railroad Passenger Corp.</u>, 909 F.2d

1557, 1564-1565 (7th Cir. 1990); <u>Akers v. Norfolk and Western Railway Co.</u>, 417 F.2d 632 (4th

Cir. 1969); <u>Holladay v. Chicago, Burlington and Quincy Railroad Co.</u>, 255 F. Supp. 879, 886

(S.D. Iowa, 1966).

An employee who has been injured partially by a FELA employer's negligence

and partially by other causes, whether those other causes relate to the preexisting

condition or to a concurrent, contemporary cause arising from the circumstance of the

injury, must pay damages only for those injuries attributable to its negligence and an

apportionment instruction may be proper. <u>Dale v. Baltimore & Ohio R.R. Co.</u>, 552 A.2d

1037 (Pa. 1989); <u>Shupe v. New York Central System</u>, 339 F.2d 998 (7thCir. 1965).


**VII.   <u>AMENDMENTS TO THE PLEADINGS</u>:**

None.


**VIII.   <u>ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE ACTION</u>:**

None.


**IX.   <u>PROBABLE LENGTH OF TRIAL BY JURY</u>:**

Approximately 5 to 7 days.


**X.   <u>WITNESS LIST</u>:**

**A.   <u>Plaintiff</u>:**

1.   The Plaintiff, Rickey A. Jones, 407 Desoto Avenue, Clewiston, Florida.

34

(The Plaintiff will testify as to all matters regarding both liability and damages in this case.  The Plaintiff will testify as to how the accident happened, the injuries he sustained, the medical treatment he underwent, as well as the vocational significance of his injuries; obtaining gainful employment outside the railroad; loss of life's pleasures and other activities and other issues regarding his physical injuries; loss of past and future earning capacity, as well as past and future pain and suffering**.)**

**The following employees of the railroad on cross-examination:**

2.      Nathaniel Cobb, Engineer
        c/o the Defendant

3.      Kevin Bushey, Conductor
        c/o the Defendant
(The two individuals above will testify to the facts concerning the conditions of Defendant's rail yard, as well as the accident in question.  They will also testify as to prior complaints with regard to the ground conditions and other working conditions in the yard itself and produce any records, photographs and/or writings of any kind with regard to the aforementioned conditions.)

4.      Larry LaRoque
        c/o the Defendant and Union Representatives
4(a)    and/or other Union Representatives
(This individual will testify to the facts concerning the conditions of Defendant's rail yard, as well as the accident in question.  He will also testify as to prior complaints with regard to the ground conditions and other working conditions in the yard itself.)

5.      Personnel of:
        Northwestern Medical Center Rehabilitation Services
        P. O. Box 1370
        St. Albans, Vermont 05478
(The witness will testify as to the authenticity of medical records.)

6.      Personnel of:
        Northwestern Medical Center
        156 Fairfield Street
        St. Albans, Vermont 05478
(The witness will testify as to the authenticity of medical records.)

7.      Robert N. Beattie, M.D.
        Doctors Office Common
        3 Crest Road
        St. Albans, Vermont 05478
(Dr. Beattie was Plaintiff's treating physician who will also testify as an expert in this case.  Dr. Beattie both treated and performed surgery on the Plaintiff and has rendered

opinions with regard to Plaintiff's diagnosis, causation, disability, future limitations, the reasonableness and necessity of his medical care, as well as Plaintiff's pain and suffering.)

8.    Michael Mikolajczak, D.O.
       The Center for Bone and Joint Surgery
       10131 W. Forest Hill Boulevard, Suite 206
       West Palm Beach, Florida 33414

(Dr. Mikolajczak was Plaintiff's treating physician who will also testify as an expert in this case.  Dr. Mikolajczak both treated and performed surgery on the Plaintiff and has rendered opinions with regard to Plaintiff's diagnosis, causation, disability, future limitations, the reasonableness and necessity of his medical care, as well as Plaintiff's pain and suffering.)

9.    Raymond A. Long, M.D.
       3 Crest Road
       St. Albans, Vermont 05478

(Dr. Long was Plaintiff's treating physician who will also testify as an expert in this case. Dr. Long both treated and performed surgery on the Plaintiff and has rendered opinions with regard to Plaintiff's diagnosis, causation, disability, future limitations, the reasonableness and necessity of his medical care, as well as Plaintiff's pain and suffering.)

10.    Personnel of:
        Hendry Diagnostic Imaging Center, Inc.
        1008 W. Sidemore Avenue
        Clewiston, Florida 33440

(The witness will testify as to the authenticity of MRI examination.)

11.    Andrew G. Verzilli, Ph.D.,
        Economist
        Verzilli & Verzilli and Consultants,  Inc.
        411 N. Broad Street
        Lansdale, PA 19446

(Dr. Verzilli is the Plaintiff's Economist.  Dr. Verzilli's testimony concerns his opinions regarding Plaintiff's difference in potential earning capacity relative as a result of Plaintiff's injury in this case.  Dr. Verzilli has rendered his opinions regarding Plaintiff's past and future wage loss to various ages as well as utilizing different discount rates.  Dr. Verzilli utilized present value calculations.)

12.    Cathy McVay, CDMS, SDAD, QRP
        Certified Disability Management Specialist
        Senior Disability Analyst and Diplomate
        State of Florida Qualified Rehabilitation Provider
        1340 U.S. Highway 1, Suite 102, Jupiter, FL 33469

(This witness is Plaintiff's Vocational Expert.  Ms. McVay will testify with regard to the effect of Plaintiff's injuries on his pre and post vocational potential and how the accident, injuries and permanent and disabling injuries have affected his ability to work and what kinds of work would be available to him in the workplace in the future.)

13.     Representative of:
        Palms Wellington Surgery Center
        460 State Road 7
        Palm Beach, Florida 33411
(The witness will testify as to the authenticity of medical records.)

14**.**    Northwestern Medical Center, Inc.
        156 Fairfield Street
        St. Albans, VT 05478
        Diagnostic Imaging Report
        c/o Luis Gonzalez, M.D.
(The witness will testify as to the authenticity of diagnostic imaging report.)

15.     Representative of:
        Deborah R. Hellinger, D.O. c/o The Hendry Diagnostic Imaging Center, Inc.
        1008 W. Sagamore Avenue, Clewiston, Fl 33440
        MRI Report of right knee 01/12/04
(The witness will testify as to the authenticity of MRI examination.)

16.     Representative of:
        The Hendry Diagnostic Imaging Center, Inc.
        1008 W. Sagamore Avenue
        Clewiston, FL 33440
        MRI Report of the left knee 8/11/03
(The witness will testify as to the authenticity of MRI examination.)

17.     Walter Wagenknecht, M.D.
        c/o Northwestern Medical Center
        X-rays of the right knee 12/10/02
(The witness will testify as to the authenticity of medical records/x-rays.)

18.     Walter Wagenknecht, M.D.
        c/o Northwestern Medical Center
        X-rays of the left knee
(The witness will testify as to the authenticity of medical records/x-rays.)

19.    Nancy Hickey, M.D.
       c/o Northwestern Medical Center
       Emergency Room Physician
(The witness will testify as to the authenticity of medical records.)

20.    Representative of:
       Northwest Vermont Health Services
(The witness will testify as to the authenticity of medical records.)

21.    Representative of:
       Northwestern Occupational Health
       Cobblestone Health Commons
       260 Crest Road, Suite 101
       Clewiston, FL 33440
(The witness will testify as to the authenticity of medical records.)

22.    D. Dunsmore, PT
       and Other Members of the Physical Therapy Staff
(The witness(es) will testify as to the authenticity of medical records.)

23.    Nimia Reyes, PT
       Hendry Regional Rehabilitation Services
       121 Central Avenue
       Clewiston, Florida
(The witness will testify as to the authenticity of medical records.)

24.    Plaintiff's Family and Friends
(Plaintiff's family and friends will testify with regard to Plaintiff's physical, emotional and mental condition, both prior to and subsequent to the accident in this case. Plaintiff's family and friends will testify with regard to plaintiff's inability to perform various family, social and work activities an, how the accident in the present case affected Plaintiff's life's pleasures.)

**B.    Defendant:**

    **1.    Anticipated Witnesses to be Called:**

1.     The plaintiff, Rickey A. Jones, 407 Desoto Ave., Clewiston, MA;

2.     Dr. Michael Kennedy, 6 Union Street, Natick, MA;

3.     Dr. Robert Galt, 2001 Palm Beach Lakes Blvd, West Palm Beach, FL 33409;

4.     Sherry Lynn Jones; Hammond, IN;

38

5.      Jessica (Garcia) Jones;

6.      Plaintiff's treating physicians, nurses, therapists, medical treatment providers, and other medical professionals regarding the injuries, medical treatment and the nature and extent of any disabilities which were allegedly caused by the accident which is the subject of the plaintiff's *Complaint*, as well as any and all pre-existing conditions or injuries, including but not limited to:

      a.      Dr. Robert N. Beattie; Northwestern Medical Center, 133 Fairfield St., St. Albans, VT;

      b.      Dr. Raymond A. Long, 3 Crest Road, St. Albans, VT;

      c.      Representatives from Center for Bone and Joint Surgery, 10131 West forest Hill Blvd., West Palm Beach, FL;

      d.      Dr. Michael Mikolajczak; 10131 West Forest Hill Blvds., Suite 206, West Palm Beach, FL;

7.      Deborah Morin; c/o NECR; 2 Federal Street, Suite 201, St Albans, VT  05478;

8      Nathaniel Cobb, c/o NECR; 2 Federal Street, Suite 201, St Albans, VT  05478;

9.      Dick Ogden; c/o Railway Claims Services; 2 Federal Street, Suite 201, St Albans, VT  05478;

10.      Mike Lawyer, c/o NECR; 2 Federal Street, Suite 201, St Albans, VT  05478;

11.      Steve Larro; c/o NECR; 2 Federal Street, Suite 201, St Albans, VT  05478;

12.      Thomas Tozzer, c/o NECR; 2 Federal Street, Suite 201, St Albans, VT  05478;

13.      Brad Ovitt, c/o NECR, 2 Federal Street, Suite 201, St Albans, VT  05478;

14.      Charlie Moore, c/o NECR, 2 Federal Street, Suite 201, St Albans, VT  05478;

15.      Kevin Bushey, c/o NECR, 2 Federal Street, Suite 201, St Albans, VT  05478;

16.      Jeff Howard, c/o NECR, 2 Federal Street, Suite 201, St Albans, VT  05478;

17.      Larry LaRoque, c/o NECR, 2 Federal Street, Suite 201, St Albans, VT  05478;

18.    Bill Magee, c/o Iowa Northern Railroad, 122 North Second Street, Green, IA;

19.    Arnold Morin, Miller River Road, St. Albans, Vt.;

20.    Scott Morin, South Carolina;

21.    Tom Murphy, c/o NECR, 2 Federal Street, Suite 201, St Albans, VT 05478;

**2.    Potential Witnesses:**

1.    Plaintiff's treating physicians, nurses, therapists, medical treatment providers, and other medical professionals regarding his treatment for injuries allegedly suffered as the incident which is the subject of his complaint, as well as any and all pre-existing conditions or injuries, including but not limited to:

    a.    Representatives of Northwestern Occupational Health, 5 Crest Road, St. Albans, VT 05478;

    b.    Representatives from Northwestern Medical Center, 133 Fairfield St., St. Albans, VT;

2.    Jessica (Garcia) Jones; last known address, 6333 Sea St., Biloxi, MS;

3.    Representatives of South Central Florida Express, 900 SWC Owens Ave., Clewiston, FL;

4.    Representatives of On Track Investigations, North Palm Beach, FL;

5.    Dr. Verne Backus;

6.    Mike Mitchell.

The defendant reserves the right to: call the plaintiff's treating physicians, all expert witnesses identified by the plaintiff, expert rebuttal witnesses; to supplement and/or amend its expert witness list prior to trial; and to further identify expert witnesses once plaintiff fully and completely identifies his expert witnesses.

XI.     **PROPOSED EXHIBITS:**

A.     **Agreed to Exhibits:**

1.     Map of the Italy Yard, St. Albans.

B.     **Plaintiff's List of Exhibits:**

1.     Photographs of the accident site and conditions of the rail yard.

2.     A diagram of Italy Yard (produced by the Defendant in this case).

3.     Medical records, reports and bills from Northwestern Medical Center Rehabilitation Services.

4.     Raymond Long, M.D.
    a.     Curriculum Vitae
    b.     Records and Reports
    c.     Transcript of Dr. Long's trial testimony and accompanying exhibits
    d.     Video tape of trial testimony and accompanying exhibits

5.     Medical records, reports and bills from Northwestern Medical Center.

6.     Robert Beatti, M.D.
    a.     Curriculum Vitae
    b.     Records and Reports
    c.     Transcript of Dr. Beatti's trial testimony and accompanying exhibits
    d.     Video tape of trial testimony and accompanying exhibits

7.     Michael Mikolajczak
    a.     Curriculum Vitae
    b.     Records and Reports
    c.     Transcript of Dr. Mikolajczk's trial testimony and accompanying exhibits
    d.     Video tape of trial testimony and accompanying exhibits

8.     Medical records, reports and bills from Hendry Diagnostic Imaging Center, Inc.

9.     Medical records, reports and bills from Hendry Regional Rehab Services.

10. Medical records, reports and bills from Northwestern Occupational Health.

11. Reports and records of Cathy McVay, CDMS, SDAD, QRP
    a. Curriculum Vitae
    b. Report of 12/12/05
    c. Report of 1/06/06

12. Reports, records, charts, etc. of Andrew G. Verzilli, Ph.D.
    a. Curriculum Vitae
    b. Report of 1/12/06
    c. Supplemental report
    d. Charts and graphs

13. Defendant's payroll records of the Plaintiff (produced by the Defendant)

14. Plaintiff's W-4 form for 2001

15. Plaintiff's W-4 form for 2002

16. The Hendry Diagnostic Imaging Center, Inc.
    MRI Report of the left knee 8/11/03
    By: Luis Gonzalez, M.D.

17. The Hendry Diagnostic Imaging Center, Inc.
    MRI Report of right knee 1/12/04

18. Diagnostic Imaging Report from Northwestern Medical Center, Inc.

19. Present Value Tables

20. Life Expectancy Tables

21. Reports and other records from Original Equipment Company, Clewiston, Florida

Plaintiff objects to any records, photographs, video tapes and/or writings of any kind from defendant and/or its employees with regard to any slippery conditions of the yard, tracks and rail equipment.

42

Plaintiff objects to Defendant's use of railroad retirement or workmen's compensation claim records and reports, written statements considered as hearsay, transcriptions of tape recorded statements of several potential witnesses that have never been produced to the Plaintiff, exemplar of a railroad car as noted in Defendant's pretrial submissions, photographs and/or videotapes of the accident scene taken subsequent to the date and time of Plaintiff's accident in this case.  The Plaintiff reserves the right to supplement Plaintiff's exhibit list upon review of Defendant's exhibits and/or supplementary materials.  The Plaintiff also reserves the right to supplement Plaintiff's objections in this regard.

C.     **Defendant's List of Exhibits**:

      1.     **Those Which the Defendant Expects to Offer**:

1.     Employee's Personal Injury Report (form PI002), dated August 15, 2002;

2.     Railroad Employee Injury And/Or Illness Record (form PI001) dated August 15, 2002;

3.     Personal Injury Report completed by Nathaniel Cobb, dated August 15, 2002;

4.     Transcript and tape of Statement of Rickey A. Jones, Jr. taken by Richard Ogden August 21, 2002;

5.     Equipment or Facility Report of Inspection of SHPX 201016, dated August 16, 2002;

6.     Records from the Railroad Retirement Board, Railroad Retirement Board, O'Brien Federal Building, Room 264,P.O. Box 529, Albany, NY 12201;

7.     Photos taken by Thomas Tozzer, August 16, 2002;

8.     Photos taken by Richard Ogden August 21, 2002;

9.     Job application of plaintiff, including resume, dated March 7, 2001;

10.     United States Marines Personnel Records;

11.     United States Marines Medical Records;

43

12.    General Code of Operating Rules, Fourth Edition, effective April 2, 2000;

13.    RailAmerica, Inc. Transportation Safety Rules & Recommended Work Guidelines, effective February 1, 2002;

14.    RailAmerica, Inc. Transportation Safety Procedures, effective February 1, 2002;

15.    Employee Assistance Program documents, Group Life Insurance information, RailAmerica, Inc. and Participating Subsidiaries insurance information and Group Long Term Disability information;

16.    The plaintiff's taxes and W-2's from 2000 to present;

17.    Defendant reserves the right to introduce records from the Plaintiff's treating physicians, nurses, therapists, medical treatment providers, and other medical professionals regarding his treatment for injuries allegedly suffered as the incident which is the subject of his complaint, as well as any and all pre-existing conditions or injuries, including but not limited to:

    a.    Records from Northwestern Medical Center including but not limited to:
        i.  the ER records dated 6/10/02;
        ii.  Dr. Beattie's History and Physical dated 10/15/02;
    b.    Records from Northwestern Medical Center Rehabilitation Services including but not limited to:
        i.  Discharge summary dated June 9, 2003;
    c.    Records from Hendry Regional Rehabilitation Services;
    d.    Records from Dr. Long; 3 Crest Road, St. Albans, VT;
    e.    Records from Dr. Beattie; Northwestern Medical Center, 133 Fairfield St., St. Albans, VT;

18.    Receipts for cash advances to the plaintiff.

**2.    <u>Those Which the Defendant May Offer if the Need Arises</u>:**

1.    Personnel records of the plaintiff from South Central Florida Express (not yet obtained);

2.    Safety shoe agreements signed by the plaintiff dated 4/20/01 and 4/29/02;

3.    Employee acknowledgement form of safety rules, signed by the plaintiff;

4.    Florida workers' compensation Uniform Medical Treatment/Status reporting form, signed by Dr. Mikolajczak dated September 24, 2004

     5.      Email messages;

     6.      statements of Tom Tozzer, Brad Ovitt and Nathaniel Cobb.

The defendant reserves the right to use any of the documents, data compilations and tangible things identified and/or produced by the plaintiff and incorporates herein by this reference the documents, data compilations and tangible things set forth in the plaintiff's disclosures. The defendant also reserves the right to supplement its list of documents, data compilations and tangible things prior to trial.

Defendant reserves the right to supplement this *Memorandum* its objections as to the plaintiff's exhibits, as the plaintiff failed to provide his *Pre-Trial Disclosures pursuant to local rule 16.5 and Fed.R.Civ. P. 26(a)(3).*

## XII.   <u>PROPOSED JURY INSTRUCTIONS, SPECIAL VERDICT FORM OR SPECIAL INTERROGATORIES:</u>

These have already been filed under separate cover.

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| | |
| The Plaintiff, | The defendant, |
| RICKEY A. JONES, | NEW ENGLAND CENTRAL RAILROAD, |
| by his attorneys, | by its attorneys, |
| | |
| /s/ Robert E. Myers, Esquire___ | /s/ Michael B. Flynn_____ |
| Robert E. Myers, I.D. #23762 | Michael B. Flynn, BBO# 559023 |
| coffeykaye_rmyers@yahoo.com | *mbflynn@flynnassoc.com* |
| COFFEY KAYE MYERS & OLLEY | Valerie A. Murphy, BBO #661460 |
| Two Bala Plaza, Suite 718 | FLYNN & ASSOCIATES, PC |
| Bala Cynwyd, PA 19004 | 400 Crown Colony Drive, Suite 200 |
| (610) 668-9800 | FLYNN & ASSOCIATES, PC |
| | Quincy, MA 02169 |
| | (617) 773-5500 |

Dated:  July 27, 2006

G:\F & A\CASE FILES\RAILAMERICA\New England Central\JONES, RICKEY A\pleadings\NECR's joint pre-trial memo.doc