UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICKEY A. JONES,<br>    Plaintiff,<br><br>v.<br><br>NEW ENGLAND CENTRAL RAILROAD, INC.,<br>    Defendant. | C.A. No.: 04-11772-MAP |

**PLAINTIFF'S REPLY IN OPPOSITION TO**
**NECR'S MOTION IN LIMINE TO EXCLUDE**
**EVIDENCE OF SLURRY, OIL OR GREASE**

I.   Introduction

NECR has moved this Court to prevent Plaintiff from testifying that slurry, grease or oil were present on himself or the tank car at the time of his accident. Its grounds for the motion are quite limited: "the plaintiff has affirmatively admitted that . . . these conditions were not present on either the soles of his boots or the "stirrup" from which he fell at the time that he fell."

II.   Mr. Jones' Testimony

NECR's statement is incorrect. It is based on a very myopic reading of his deposition. Mr. Jones testified consistently that the tank car hand pole, stirrup and his shoes were slippery from slurry, oil, grease and rotten grain present throughout the yard and over which he had to walk. These statements provide examples of his testimony:

- Mr. Jones was asked whether there was grease on the stirrup and railing on the tank car. He replied, "There is grease on all the cars over there. * * * There is." (Jones Dep. at 138)

- He was asked, "Were there any other foreign substances that you noticed on the car?" He replied, "Had slurry all over it." When asked if that meant on the stirrup too, he replied, "All over the car." (Jones Dep. at 133)

- He was later asked, "Was that stuff, was that slurry on the part of the car that you rode on?" He answered, "It's everywhere." He was asked, "Did it make it slippery?" and he replied, "It made it hard to hold on with your feet and your hands." * * * "It's all over the cars. I mean, it's all over all the SHPX [tank] cars." (Jones Dep. at 139-140)

- Mr. Jones explained that there were slippery materials on his boot after the accident. He said, "Stuff on my boots from walking in the yard. Slurry . . . It gets on your gloves. All you're going to do is slide off the car when you're trying to get down." (Jones Dep. at 159)

- Mr. Jones was asked what he meant by he was caused to slip due to "bad footing." He replied, "The whole yard is bad footing. From the grease they have on the switches."

- When asked what on the tank car itself made him fall, he replied, "On the tank car itself it was the slurry. [I]t gets everywhere." (Jones Dep. at 164)

- He explained that the slurry was "all over the car," but that he could not specify that it was on the stirrup because "I couldn't see the stirrup. The stirrup is underneath the car." (Jones Dep. at 167)

- Mr. Jones explained the unsafe conditions of the ground, including burnt motor oil used to lubricate instead of using graphite, puddles of oil, grease and rotten grain. (Jones Dep. at 176-177)

- Mr. Jones explained, "[The grain is] worse than grease because it sticks to your boot and won't come off." (Jones Dep. at 177-178)

- Referring to all of the slippery substances he said, "You know, it just the track conditions due to those were atrocious because you couldn't step in and lace cars without getting this on your feet. * * * I mean, in the yard. . , grease, oil and the grain you cannot stop from stepping in it." (Jones Dep. at 178)

- Defense counsel asked, "Apparently what you're saying is that by walking around the yard, you got these – you <u>may</u> have gotten some of this stuff on the bottom of your boots?" Jones replied, "No, sir. I <u>did</u> get that stuff on the bottom of my boots." (Jones Dep. at 178-179)

- Jones was asked, "Your boots had evidence of these conditions on them?" He answered, "Yes, sir. Rotten grain and I know motor oil was because this was on the tip of my boot." (Jones Dep. at 182)

- Mr. Jones later explained that he knew that he stepped in rotten grain and had tried to get it off his boots, but that it sticks. (Jones Dep. at 270-271)

III. <u>Argument</u>

Mr. Jones testified at his deposition, and will testify at trial, that the tank car was slippery. He will testify that the slurry covered all of the cars and the entire car. He will also testify that slurry, oil, grease and rotted gain covered the ground throughout the yard and that it was impossible to walk in the yard without stepping in it. He will testify that a combination of the slippery tank car and slippery substances from the yard on his boots caused him to slip off the tank car and sustain his injuries.

Under the FELA, both direct and circumstantial evidence is permitted.

Circumstantial evidence is liberally accepted. The Supreme Court has specifically sanctioned sending the case to the jury even when the proof is "entirely circumstantial."[1] *Rogers v. Missouri Pacific R.R.*, 352 U.S. 500, 508 (1957). Therefore, even if Mr. Jones was not certain that slurry was on the tank car stirrup -- although he knew it was on the rest of the tank car -- the jury could reasonably conclude that it was also on the stirrup. Likewise, even if Mr. Jones could not state precisely which slippery substances were on the bottom of his boot, the jury could conclude that one or more of the substances covering the ground got onto the bottom of his boots as he was walking in the yard. Furthermore, the jury could reasonably conclude that this combination of slippery substances caused him to slip off the tank car stirrup and sustain his injures.

NECR's suggests that evidence about the slurry, oil, grease, etc. is not relevant. Based on the facts of this accident, the argument is ludicrous and should be rejected. Therefore, NECR's motion should be denied.

---

[1] *See, e.g., Stanzak v. Pennsylvania R. Co.*, 174 F.2d 43 (7th Cir. 1949), (Stanzak was engaged in a local industry switching operation. He was seen by the conductor standing on the lowest step of a caboose, and then moments later, he disappeared. The evidence showed potentially defective conditions of the caboose step and the loading platform that was 4 to 6 inches from the train. No one witnessed the accident, and there was no evidence as to what caused him to fall. The railroad argued that the accident was solely due to Stanzak's own negligence. The Court held that there was sufficient circumstantial evidence to enable the jury to conclude that one or both of the alleged defects contributed to his death.); *Lavender v. Kurn*, 327 U.S. 645 (1946), (Decedent had crossed from the north to south side of a track prior to his death. Although it was determined that this death was caused by an object striking his head, there were no witnesses. Plaintiff claimed that decedent was struck by a loosely hanging mail hook on the outside of a backing-up train. The railroad argued that he was murdered by one of the many hoboes and tramps who frequented the area. The evidence indicated he had not been robbed. The Court noted that facts existed to support either explanation of decedent's death, and that even though circumstantial, the jury's verdict that accepted the inference of railroad negligence, was permissible.)

        Respectfully submitted,

        COFFEY KAYE MYERS & OLLEY


        ____s / Lawrence A Katz, Esquire____
           LAWRENCE A KATZ
           ROBERT E MYERS
           Counsel for Plaintiff

COFFEY KAYE MYERS & OLLEY
718 Two Bala Plaza
Bala Cynwyd, PA  19004
610-668-9800
610-667-3352 (Fax)